Thomas Paul **CYR**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 05–92–02759–CR.

Court of Appeals of Texas, Dallas.

Oct. 31, 1994.

---

John Williamson, Dallas, for appellant.

Sue Korioth, Dallas, for appellee.

Before McGARRY,[1] C.J., WHITHAM[2] and SPURLOCK[3], JJ.

## OPINION

WHITHAM, Justice (Assigned).

Thomas Paul Cyr, an anti-abortion protestor, was arrested when he refused to voluntarily leave Aaron's Women's Health Center, a general gynecological clinic and abortion center in Dallas, Texas. The jury convicted Cyr of criminal trespass and assessed his punishment at fourteen days' confinement and a $500 fine. In two points of error, Cyr challenges the trial court's exclusion of certain evidence during trial and its refusal to instruct the jury on the defense of necessity. For the reasons set forth below, we affirm the judgment of the trial court.

## FACTS

At approximately 7:30 a.m. on January 18, 1992, the police were called to a disturbance at Aaron's Women's Health Center ("Aar-on's"). Dallas Police Officer Richard Garcia was the first officer to arrive at the scene. When he arrived, he observed a number of abortion protestors in the hallway outside the clinic. Garcia contacted Phil Harris, the building maintenance man, who indicated that the protestors were not welcome in the building. Harris notified the protestors in the hallway that he had power of attorney over the building and that they were not welcome. He asked them to leave. After some of the protestors refused, Officer Garcia warned them that they were trespassing and that they must either leave the building or be arrested. Garcia then gave a second warning. When the protestors still refused to depart, Garcia called for an arrest team.

After clearing the hallway, Garcia went inside the clinic. There, he confronted additional protestors. He contacted Pat Pinkusiewiyz, the clinic manager, who told him that the protestors were not welcome inside the clinic. She then, in Garcia's presence, asked the protestors to leave. When the protestors refused, Garcia warned them that they must leave the premises or be arrested. He then approached each protestor individually and repeated the warning. Those protestors who did not comply with Officer Garcia's warnings were arrested. Cyr was arrested inside the clinic.

At trial, Cyr sought to introduce evidence suggesting that his actions were necessary to prevent the killing of unborn children. The State objected to the introduction of any such evidence, arguing that the evidence was not relevant to any issue at trial. The trial court agreed and refused to admit the evidence. The court did, however, allow Cyr to make a lengthy bill of exception regarding the objected-to evidence.

In the bill of exception, Cyr offered the testimony of a number of protestors. The protestors testified that they believed: (1) their actions were immediately necessary to

**1.** Although Chief Justice McGarry participated in the submission of this case, he voluntarily recused himself from the panel pursuant to an order dated October 14, 1994. Thus, Chief Justice McGarry did not participate in the decision rendered herein.

**2.** The Honorable Warren Whitham, Justice, Court of Appeals, Fifth District of Texas at Dallas, Retired, sitting by assignment.

**3.** The Honorable Joe Spurlock II, Justice, Court of Appeals, Second District of Texas at Fort Worth, Retired, sitting by assignment.

avoid the killing of unborn babies; (2) the women at the clinic and their babies faced imminent harm; (3) abortion clinics were not well-regulated and many (including this one) performed unlawful, late-term abortions; (4) abortions were taking place at Aaron's on the day in question; and (5) abortion procedures were painful to the unborn baby.

Cyr's bill of exception also included the testimony of Father Edward Robinson, a Catholic priest, and Dr. and Mrs. Enrique Pinkusiewiyz, the owners of Aaron's. Father Robinson's testimony focused on (1) whether life begins at conception; and (2) whether such a belief is rational from a scientific, religious, and philosophic perspective. Dr. and Mrs. Pinkusiewiyz's testimony concentrated on (1) the difference between lawful and unlawful abortions in Texas; (2) the different types of abortions available at Aaron's and their relative costs; (3) the manner in which fetal age is determined at Aaron's; and (4) the counseling services available at Aaron's.

At the end of his bill of exception, Cyr urged the court to reconsider its ruling regarding the excluded testimony. The court declined to do so. Later, at the close of all the evidence, Cyr requested an instruction to the jury on the defense of necessity. The trial court refused the requested instruction, concluding that the necessity defense was not relevant to any issue at trial. Cyr appeals both the trial court's decision to exclude the proffered evidence and its refusal to provide a necessity instruction to the jury.

## EXCLUSION OF EVIDENCE

■ In his first point of error, Cyr challenges the trial court's exclusion of evidence relating to necessity. Specifically, Cyr argues that the excluded evidence adequately raised the defense of necessity and that, because the defense is one to be determined by the factfinder, the evidence should have been submitted to the jury for its consideration. See Graham v. State, 566 S.W.2d 941, 952 n. 3 (Tex.Crim.App.1978).

■ For the exclusion of evidence to constitute reversible error, the evidence must be both material and relevant. See Bird v. State, 692 S.W.2d 65, 73 (Tex.Crim.App. 1985), cert. denied, 475 U.S. 1031, 106 S.Ct. 1238, 89 L.Ed.2d 346 (1986). There is no error in excluding evidence pertaining to a defense if the evidence fails to show that the defendant is entitled to rely on the defense. See Roy v. State, 552 S.W.2d 827, 830–31 (Tex.Crim.App.1977), overruled on other grounds, 650 S.W.2d 414, 416 (Tex.Crim.App. 1983); Moses v. State, 814 S.W.2d 437, 441 (Tex.App.—Austin 1991, pet. ref'd). Thus, to show an entitlement to the defense asserted, a defendant's bill of exception must demonstrate that all of the elements of the defense have been satisfied. See Roy, 552 S.W.2d at 831.

Cyr relies on the defense of necessity in this case. The defense, as codified in Section 9.22 of the Texas Penal Code, states that conduct is justified if:

(1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm;

(2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law prescribing the conduct; and

(3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.

TEX.PENAL CODE ANN. § 9.22 (Vernon 1974). Cyr asserts that the proffered evidence established the existence of each element of the necessity defense and, thus, entitled him to submission of the evidence at trial. On the record before us, we cannot agree.

■ The first prong of the necessity defense requires evidence of both immediate necessity and imminent harm. See Roy, 552 S.W.2d at 830; Egger v. State, 817 S.W.2d 183, 186 (Tex.App.—El Paso 1991, pet. ref'd). If proof in support of either of these elements is missing, the trial court does not err in excluding evidence relating to the defense. See Roy, 552 S.W.2d at 831; Egger, 817 S.W.2d at 186; Moses, 814 S.W.2d at 441. In this case, Cyr maintains that imminent harm was shown because the evidence offered in his bill of exception established (1) that abortions were taking place at Aaron's on Janu-

ary 18th, and (2) that this activity was harmful to both the unborn child and the mother. In support of his claim that abortion is harmful, Cyr argues that an unborn child is a thing of value and its death can therefore reasonably be regarded as loss or injury. *See* TEX.PENAL CODE ANN. § 1.07(16) (Vernon 1974) (defining harm as "anything reasonably regarded as loss, disadvantage, or injury, including harm to another person in whose welfare the person affected is interested"); *see also Leal v. C.C. Pitts Sand & Gravel, Inc.,* 419 S.W.2d 820 (Tex.1967) (recognizing cause of action for wrongful death of viable, premature infant caused by prenatal injuries).

While we may agree with Cyr that an unborn child is a "thing of value," we nevertheless cannot conclude, in light of *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), that a woman's decision to terminate her pregnancy results in a legally operative harm for purposes of the necessity defense.[4] "[T]o be legally operative, the 'harm' perceived by the proponent of a defense of necessity cannot serve to derogate the rights of others as prescribed by a higher authority." *Egger,* 817 S.W.2d at 186. In *Roe,* the United States Supreme Court recognized the constitutional right of a woman to decide whether or not to terminate her pregnancy. *See Roe,* 410 U.S. at 153, 93 S.Ct. at 727.[5] As a court of *stare decisis,* we are bound to adhere to the ruling of the United States Supreme Court, regardless of our or anyone else's view of the propriety of that decision. *See Egger,* 817 S.W.2d at 186. Thus, while we may consider the death of an unborn child to be harmful to a "thing of value," we nevertheless find this "harm" to be superseded by the constitutionally protected right of a wom-

an to terminate her pregnancy. Under such circumstances, any "harm" which may be inflicted on the unborn child cannot provide the "legally operative harm" required for invocation of the necessity statute.

No doubt anticipating this argument, Cyr next contends that the "constitutional right" announced in *Roe* is irrelevant to our analysis because the harm sought to be prevented in this case was the commission of third trimester abortions. Cyr notes that third trimester abortions are not protected under *Roe* and are, in fact, unlawful under existing Texas law. *See Roe,* 410 U.S. at 163–65, 93 S.Ct. at 731–33 (protecting only those abortions taking place prior to viability and allowing state regulation of post-viability abortions); TEX.REV.CIV.STAT.ANN. art. 4495b, § 4.011(b) (Vernon Supp.1994) (prohibiting person from intentionally or knowingly performing abortion on woman who is pregnant with viable unborn child during third trimester of pregnancy).[6] As such, he maintains that the commission of third trimester abortions can provide the "legally operative harm" necessary to invoke the necessity defense.

While we agree with Cyr that the commission of unlawful, third trimester abortions could provide the harm required under the necessity statute, we cannot agree, based on the record in this case, that any such third trimester abortions were imminent at Aaron's on the morning of January 18th. In this case, a number of protestors testified during the bill of exception that they *believed* that Aaron's was performing late-term abortions and that Aaron's was *known* to specialize in aborting late-term babies. Others testified that abortion clinics were not closely regulated in Texas and that, because of lax report-

---

4. Although Cyr argues that *Roe* is wholly irrelevant in this case because it involves restrictions on the government rather than restrictions on individuals, we do not agree. *Roe* recognizes the constitutional right of a woman to terminate her pregnancy prior to viability. As such, the decision is relevant to determining whether an abortion can result in a legally operative harm for purposes of the necessity statute.

5. Of course, we recognize, as did the Court in *Roe,* that the right of a woman to terminate her pregnancy is not unqualified. *See Roe,* 410 U.S. at 154, 93 S.Ct. at 727 (noting that state's right to

protect life of fetus becomes more and more compelling as woman's pregnancy approaches term).

6. A number of exceptions to the general ban on third trimester abortions do exist; for example, an abortion in the third trimester may be appropriate when the fetus has a severe and irreversible abnormality or when the abortion is necessary to prevent death or serious impairment to the mother. *See* TEX.REV.CIV.STAT.ANN. art. 4495b, § 4.011(d) (Vernon Supp.1994).

ing procedures, it was entirely *possible* that unlawful abortions were being conducted at Aaron's without detection. Another protestor testified that she had seen a woman in the clinic who she *believed* to be at least seven or eight months pregnant. While this evidence suggests that late-term abortions *could* have been taking place at Aaron's, it does not establish that any unlawful third trimester abortions were in fact being performed at Aaron's on January 18th, or that any particular woman was scheduled to undergo a third trimester abortion that day. *See Thomas v. State,* 855 S.W.2d 212, 214 (Tex.App.—Corpus Christi 1993, no pet.). Thus, the evidence is insufficient to establish that any unlawful third trimester abortions were imminent on the day of Cyr's arrest.

As the court noted in *Thomas,* the imminence of the harm as well as the reasonableness of the belief must be in evidence. *See Thomas,* 855 S.W.2d at 214. Because the record fails to show that any unlawful, third trimester abortions were imminent on the day of Cyr's arrest, Cyr has not established all the elements of a necessity defense. Accordingly, the trial court did not err in excluding evidence pertaining to the defense. *See Roy,* 552 S.W.2d at 831; *Moses,* 814 S.W.2d at 441.

Cyr's first point of error is overruled.

### Failure to Instruct

In his second point of error, Cyr contends that the trial court erred in failing to instruct the jury on the defense of necessity. He maintains that an instruction was required in this case because the evidence in his bill of exception established each element of the necessity defense. We disagree.

The evidence included in Cyr's bill of exception did not establish all the elements of the necessity defense. *See Roy,* 552 S.W.2d at 830–31. Nor did the evidence admitted at trial satisfy all the elements of the defense. Without evidence raising a fact issue on each element, an instruction to the jury regarding the necessity defense would have been improper. *See Egger,* 817 S.W.2d at 187; *Bobo v. State,* 757 S.W.2d 58, 64 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd), *cert. denied,* 490 U.S. 1066, 109 S.Ct. 2066, 104 L.Ed.2d 631 (1989). It follows that the trial court did not err in refusing to give the requested instruction. Cyr's second point of error is overruled.

The judgment of the trial court is affirmed.