02-11-155-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00155-CR

 

 









 
 
 Joe
 A. Miller
  
  
  
 v.
  
  
  
 The
 State of Texas
 
 
 §
  
 §
  
 §
  
 §
  
 §
 
 
 From the 213th District
 Court
  
 of
 Tarrant County (1188460D)
  
 January
 31, 2013
  
 Opinion
 by Justice Gardner
  
 (nfp)
 
 


 

JUDGMENT

 

          This
court has considered the record on appeal in this case and holds that there was
no error in the trial court’s judgment.  It is ordered that the judgment of the
trial court is affirmed.

 

SECOND DISTRICT COURT OF APPEALS








 

 

 

 

By_________________________________

   
Justice Anne Gardner








 

 

 

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00155-CR

 

 


 
 
 Joe A. Miller
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM THE 213th
District Court OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

Introduction

A
jury convicted Appellant Joe A. Miller of unlawful possession of a firearm by a
felon,[2] and the trial court
sentenced him to five years in prison.  In two points, Appellant asserts that
the trial court erred (1) by denying his motion to suppress and (2) by
excluding his evidence in support of, and by failing to instruct the jury on,
the necessity defense.  We affirm.

Motion
to Suppress

In
his first point, Appellant asserts that the trial court erred by denying his
motion to suppress because the arresting officers did not have reasonable
suspicion to detain and search him in violation of his Fourth Amendment rights;
article I, section 9 of the Texas Constitution; and article 38.23 of the code
of criminal procedure.[3]

Testimony
and Trial Court Ruling at Suppression Hearing[4]

Arlington
Police Officer Nicholas Harper testified that at approximately 1:50 a.m. on
January 9, 2010, he and Officer David Kubinsky were dispatched to the Gold
Nugget Bar.  The dispatcher relayed that a 911 caller had reported a criminal trespass
in progress at the bar.  Officer Harper explained that “the caller at the
location believed that a suspect was inside the bar who had previously been
given a criminal trespass warning from the location.”  The officers were provided
a description of the suspect but not a name.

When
the officers entered the Gold Nugget, Officer Harper spoke to the bartender,
Pricilla Cisneros, while Officer Kubinsky scanned the bar for the suspect.  As
Officer Kubinsky approached and detained the suspect, Cisneros confirmed that the
detained individual was the person she thought was criminally trespassing.[5] 
Officer Harper testified that he and Officer Kubinsky escorted the suspect out
of the bar, explaining that they needed to identify him and to determine
whether he was listed on the department’s criminal trespass log “as is our
procedure when we go on those type [of] calls.”  The officer further explained,

[I]t’s very loud inside the bar, and the music is
playing.  It’s hard to talk on the [radio], so we are actually trained for most
calls inside locations where it’s a club or a bar, if the situation allows, to
take the suspect outside so we can deal with them in a more safe manner for
officers.

Once
outside, the suspect provided information and identified himself as Appellant,
and Officer Kubinsky attempted to confirm whether he was listed on the
department’s criminal trespass log.  At the same time, Officer Harper began to
pat down Appellant.  When asked why he frisked Appellant for weapons, Officer
Harper responded that “[w]e had actually been told by our department that the
suspect had previously threatened officers with harm on a separate call, and I
actually recognized this suspect as the individual that we were warned that he
threatened to hurt officers [previously].”[6]  Officer Harper explained
that, given Appellant’s history, he thought Appellant might be armed and that
his jacket might be concealing a weapon.  Officer Harper testified that
Appellant attempted to guard the back portion of his waistline by making it
appear “as if he could not move his arms back.”  When Officer Harper moved
Appellant’s arms, Appellant’s jacket flipped to the side, and Officer Harper
saw a pistol sticking out of Appellant’s waistband.  Officer Kubinsky took
custody of and unloaded the .45 caliber pistol.  At that time, the officers did
not know that Appellant was a felon, and they arrested him for the unlawful
carrying of a weapon inside the Gold Nugget.[7]  Meanwhile, the officers
discovered that Appellant was not listed in the department’s criminal trespass
log.

The
trial court made the following findings on the record:

The officer of the Arlington police department was
dispatched to the Golden Nugget Bar in response to a criminal trespass call. 
They had been given a description of the person that the caller suggested had
trespassed at the location.

Once the officer arrived, they talked
with the bartender, who confirmed that the Defendant was a person to whom she
felt -- of whom she felt was trespassing.  The Defendant matched the description
that was given by the caller as being a person who was either -- appeared to be
either Hispanic or a white male wearing a khaki jacket. . . .

Officer approached the Defendant, took
Defendant outside the bar.  Officer Harper conducted a Terry frisk, or pat
down. . . .  During the course of that, Officer Harper noticed the butt of a
gun.  Officer seized the gun.

The Court . . . therefore finds that
there’s no violation of Article 38.23 of the Texas Code of Criminal
[P]rocedure.

Standard
of Review

We
review a trial court’s ruling on a motion to suppress evidence under a
bifurcated standard of review.  Amador v. State, 221 S.W.3d 666, 673
(Tex. Crim. App. 2007); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997).  In reviewing the trial court’s decision, we do not engage in our
own factual review.  Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim.
App. 1990); Best v. State, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth
2003, no pet.).  The trial judge is the sole trier of fact and judge of the
credibility of the witnesses and the weight to be given their testimony.  Wiede
v. State, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); State v. Ross,
32 S.W.3d 853, 855 (Tex. Crim. App. 2000), modified on other grounds by
State v. Cullen, 195 S.W.3d 696 (Tex. Crim. App. 2006).  Therefore, we give
almost total deference to the trial court’s rulings on (1) questions of
historical fact, even if the trial court’s determination of those facts was not
based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact
questions that turn on an evaluation of credibility and demeanor.  Amador,
221 S.W.3d at 673; Montanez v. State, 195 S.W.3d 101, 108–09 (Tex. Crim.
App. 2006); Johnson v. State, 68 S.W.3d 644, 652–53 (Tex. Crim. App.
2002).  But when application-of-law-to-fact questions do not turn on the
credibility and demeanor of the witnesses, we review the trial court’s rulings
on those questions de novo.  Amador, 221 S.W.3d at 673; Estrada
v. State, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); Johnson, 68
S.W.3d at 652–53.

Stated
another way, when reviewing the trial court’s ruling on a motion to suppress,
we must view the evidence in the light most favorable to the trial court’s
ruling.  Wiede, 214 S.W.3d at 24; State v. Kelly, 204 S.W.3d 808,
818 (Tex. Crim. App. 2006).  When the trial court makes explicit fact findings,
we determine whether the evidence, when viewed in the light most favorable to
the trial court’s ruling, supports those fact findings.  Kelly, 204
S.W.3d at 818–19.  We then review the trial court’s legal ruling de novo
unless its explicit fact findings that are supported by the record are also
dispositive of the legal ruling.  Id. at 818.

Applicable
Law

The
Fourth Amendment protects against unreasonable searches and seizures by government
officials.  U.S. Const. amend. IV; Wiede, 214 S.W.3d at 24.  To suppress
evidence because of an alleged Fourth Amendment violation, the defendant bears
the initial burden of producing evidence that rebuts the presumption of proper
police conduct.  Amador, 221 S.W.3d at 672; see Young v. State,
283 S.W.3d 854, 872 (Tex. Crim. App.), cert. denied, 130 S. Ct.
1015 (2009).  A defendant satisfies this burden by establishing that a search
or seizure occurred without a warrant.  Amador, 221 S.W.3d at 672.  Once
the defendant has made this showing, the burden of proof shifts to the State,
which is then required to establish that the search or seizure was conducted
pursuant to a warrant or was reasonable.  Id. at 672–73; Torres v.
State, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); Ford v. State,
158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

A
detention, as opposed to an arrest, may be justified on less than probable
cause if a person is reasonably suspected of criminal activity based on
specific, articulable facts.  Terry v. Ohio, 392 U.S. 1, 21, 88
S. Ct. 1868, 1880 (1968); Carmouche v. State, 10 S.W.3d 323, 328
(Tex. Crim. App. 2000).  An officer conducts a lawful temporary detention when
he has reasonable suspicion to believe that an individual is violating the
law.  Crain v. State, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010); Ford,
158 S.W.3d at 492.  Reasonable suspicion exists when, based on the totality of
the circumstances, the officer has specific, articulable facts that when
combined with rational inferences from those facts, would lead him to
reasonably conclude that a particular person is, has been, or soon will be
engaged in criminal activity.  Ford, 158 S.W.3d at 492.  This is an
objective standard that disregards any subjective intent of the detaining officer
and looks solely to whether an objective basis for the detention exists.  Id.

Once
a suspect has been lawfully detained, an officer may conduct a limited search
for weapons, or a “protective frisk,” when a frisk is reasonably warranted for
the officer’s safety and for the safety of others.  See Terry, 392 U.S.
at 27, 88 S. Ct. at 1883; Balentine v. State, 71 S.W.3d 763, 769 (Tex.
Crim. App. 2002).  A pat-down search for weapons or contraband without a
warrant is justified only when specific and articulable facts, when taken
together with rational inferences from those facts, reasonably could lead to
the conclusion that the suspect might possess a weapon.  See Terry, 392
U.S. at 27, 29–31, 88 S. Ct. at 1883, 1884–85; Carmouche, 10 S.W.3d at
329–30.  The officer need not be absolutely certain that an individual is
armed; the issue is whether a reasonably prudent person justifiably would
believe that he or others were in danger.  See Balentine, 71
S.W.3d at 769; O’Hara v. State, 27 S.W.3d 548, 551 (Tex. Crim. App.
2000).

Analysis

Appellant
asserts that Officer Harper’s “own testimony supports a finding of no
reasonable suspicion to justify the detention and search of [his] person and, 
therefore, the evidence obtained subsequent to said illegal detention must be
suppressed.”  Appellant relies on Officer Harper’s testimony on
cross-examination as follows:

          Q.  . . . How
long after you had found the gun, conducted this search of my client -- how
long after that did you get the information confirming that he indeed had been
issued a trespass warning for that particular establishment?

 

          A.  I did
not.

 

          Q.  Who
did?

 

          A.  None of
us did.

 

          Q.  Okay. 
Explain further.

 

          A.  Okay. 
He was not actually listed in our criminal trespass log, so --

 

. . . . 

 

          Q.  Okay. 
And when did you ever -- after that, when did you get the confirmation from CIC
that he was not on the criminal trespass [log]?

 

          A.   I
believe we got that confirmation after we had him in custody, and the situation
was made safe, and then Officer Kubinsky was able to resume his record was
checked [sic].

 

          Q.  Okay. 
So you agree or disagree with me is all right.  But for you going to that
location pursuant to a dispatch for criminal trespass, but for that, do you
agree you would have never had this man detained and been reaching into his
waistline conducting any type of pat down or search?

 

          A.  I wouldn’t say never, but it’s probably
unlikely.

Citing
Crain v. State, Appellant contends that he was not committing a criminal
offense at the time of the detention and that Officer Harper “exceeded the
scope of any alleged Terry detention when he conducted a pat down search
on [him] without even knowing if [he] was, in fact, criminally trespassing.”  See
315 S.W.3d at 53.

In Crain,
the court of criminal appeals held that the arresting police officer did not
have reasonable suspicion to detain Crain.  Crain is inapposite to the
instant case, however.  The facts leading up to the officer’s contact with
Crain were that Crain was walking late at night in a residential area in which
burglaries occurred mostly after midnight, and Crain “grabb[ed] at his waist”
when he saw the police officer’s vehicle drive past him.  315 S.W.3d at 53. 
The court of criminal appeals explained that,

[t]his combination of
circumstances motivated [Officer] Griffin to return to the area after he
responded to a theft call.  At the time Griffin returned to talk to the
appellant, he had neither any intention nor reason to arrest the appellant.  No
evidence was produced demonstrating that Griffin believed the appellant was
engaged in criminal activity at the time . . . .

 

During
cross-examination, Griffin agreed that there were “[a] hundred different things
[the appellant] could have been doing . . .” at the time he reached for his
waistband and that the fact that the appellant had reached for his waistband
did not necessarily mean that criminal activity was afoot.  Further, [Griffin
testified] during cross, [that] there were no burglaries reported for that
residential area on the evening of the appellant’s arrest. . . .

 

. . .  Griffin did not offer any
testimony that might have raised his suspicion that the appellant was engaged
in criminal activity before he approached the appellant and smelled marihuana
on him.  We find no other indicia of reasonable suspicion on the record before
us.

Id.

We
conclude that in the instant case, the officers had reasonable suspicion to
detain Appellant.  The 911 dispatcher advised Officers Harper and Kubinsky that
a caller had reported a criminal trespass in progress at the Gold Nugget.  See
Derichsweiler v. State, 348 S.W.3d 906, 914 (Tex. Crim. App.) (stating
that a 911 police dispatcher is ordinarily regarded as a “cooperating officer”
in determining whether reasonable suspicion exists), cert. denied, 132
S. Ct. 150 (2011).[8]  When the officers
arrived at the Gold Nugget, Officer Kubinsky detained Appellant, who matched
the description of the suspected criminal trespasser, and the bartender
confirmed that Appellant had been the subject of the 911 call.[9] 
See Brother v. State, 166 S.W.3d 255, 258 (Tex. Crim. App. 2005)
(finding reasonable suspicion for investigative detention based on information
supplied by citizen-informant), cert. denied, 546 U.S. 1150 (2006); see
also State v. Garcia, 25 S.W.3d 908, 912–13 (Tex. App.—Houston [14th
Dist.] 2000, no pet.) (commenting that the reliability of the information from
an individual who presents himself to an officer in person and whose identity
might easily be traced is increased); State v. Sailo, 910 S.W.2d 184,
188 (Tex. App.—Fort Worth 1995, pet. ref’d) (explaining that “information from
a citizen who confronts an officer in person to advise the officer that a
designated individual present on the scene is committing a specific crime
should be given serious attention and great weight by the officer”).  This
information was sufficient for the officers to temporarily detain Appellant.  See
generally Derichsweiler, 348 S.W.3d at 916–17.  That the officers
ultimately discovered that Appellant was not on the criminal trespass log does
not vitiate the officer’s actions in hindsight.  See Garcia v. State, 43
S.W.3d 527, 530 (Tex. Crim. App. 2001) (holding that it is not necessary to
show with absolute certainty that a crime has occurred in order to show
reasonable suspicion); see also Parson v. State, No. 11-10-00244-CR,
2012 WL 4951183, at *4 (Tex. App.—Eastland Oct. 18, 2012, no pet.) (op. on
reh’g) (“A mistake about the facts, if reasonable, will not vitiate an
officer’s actions in hindsight so long as his actions were lawful under the
facts as he reasonably, albeit mistakenly, perceived them to be.”) (citing Robinson
v. State, 377 S.W.3d 712, 720–22 (Tex. Crim. App. 2012)).

We
also conclude that the officers were justified in conducting a pat down of
Appellant.  After detaining Appellant, the officers escorted him out of the bar
so that they could further investigate the trespass allegation in a quieter,
safer place, as they had been trained.  Officer Harper explained that, once
outside, Officer Kubinsky began checking to see if Appellant was listed on the
criminal trespass log, and he (Officer Harper) conducted a pat down on
Appellant.  Officer Harper explained that he recognized Appellant as someone
who had previously threatened to hurt policemen and that Appellant’s jacket could
have been concealing a weapon.  We conclude that a reasonable officer in
Officer Harper’s position would be justified in believing that Appellant might
have been armed and dangerous.  See Martinez v. State, 236 S.W.3d 361,
369–70 (Tex. App.—Fort Worth 2007, pet. dism’d) (holding that “the issue is
whether a reasonably prudent officer in the same circumstances would be
warranted in believing that his safety or that of others is in danger”); see
also Glazner v. State, 175 S.W.3d 262, 265 (Tex. Crim. App. 2005) (holding
that the officer does not have to feel personally threatened, and he does not
have to be absolutely certain that the suspect is armed in order to conduct a
pat-down search).

Appellant
argues that Officer Harper should have waited to conduct a pat down search
until Officer Kubinsky determined whether Appellant was, in fact, criminally
trespassing.  However, “[t]he purpose of a Terry [pat-down] search is to
neutralize a potentially volatile situation and allow an officer to investigate
without fear of violence.”  Martinez, 236 S.W.3d at 369; see Davis v.
State, 829 S.W.2d 218, 220 (Tex. Crim. App. 1992) (op. on reh’g) (purpose
of limited frisk is to allow officer to pursue investigation without fear of
violence, not to discover evidence of a crime); see also Griffin v. State,
215 S.W.3d 403, 409 (Tex. Crim. App. 2006) (noting that “[p]olice knowledge of
appellant’s past illegal drug activity” was one of several specific and
articulable circumstances supporting a finding that the police reasonably suspected
that the appellant was selling cocaine).  For the above reasons, the trial
court did not abuse its discretion by denying Appellant’s motion to suppress. 
We overrule Appellant’s first point.

Necessity
Defense

In
his second point, Appellant asserts that the trial court abused its discretion
by excluding the evidence he proffered in support of, and by failing to
instruct the jury on, the necessity defense.  Appellant maintains that, by
preventing him from presenting this evidence, the trial court infringed on his
right to mount a meaningful defense.

Pertinent
Facts

During
his case in chief, Appellant attempted to introduce evidence in support of a
necessity defense.  Appellant explained generally that he wished to introduce
evidence that he and his girlfriend were the victims of an armed robbery one
month before the instant offense and that Appellant always carried a gun with
him after that.  The trial court preliminarily sustained the State’s relevancy
objection, and Appellant presented a bill of exception outside the jury’s
presence.

At
the hearing, Appellant testified that he operated a car dealership and that on
December 12, 2009, he possessed a large sum of cash from car sales that day. 
At approximately 10:30 p.m., Appellant walked to the nearby Gold Nugget to meet
his girlfriend, Angelica Godinez.[10]  While at the bar,
Appellant ran into Eric Chatman, the bouncer at the bar.  Chatman noticed that
Appellant had several hundred dollar bills in his pocket and commented, “Oh, I
see you’re a baller; you’re loaded.”  Godinez then arrived, and the two drank
beer and left about an hour and fifteen minutes later.  Appellant and Godinez
drove to Godinez’s nearby apartment.  On the way, Appellant began to feel
“weird” and “sleepy,” and once inside the apartment, he went to sleep
immediately.  Appellant was later awakened by Arlington police officers, who
told him that Godinez had been robbed and assaulted while he was asleep.[11] 
Appellant believed he had been drugged at the Gold Nugget that evening and that
Chatman “had something to do” with the robbery.[12] 
Appellant further testified that the robbery caused him to fear for his and
Godinez’s safety and that he therefore purchased a firearm and “start[ed] carrying”
it.

Appellant
testified that when he walked into the Gold Nugget twenty-eight days after the
robbery, he felt it was immediately necessary to possess a firearm to avoid “imminent
harm” because Chatman still worked there.[13]  Appellant admitted that
he was a convicted felon and that he intentionally or knowingly possessed a
firearm away from the premises where he lived.  The trial court denied
Appellant’s request to introduce the proffered evidence.

Exclusion
of Evidence

Standard
of Review and Applicable Law

We
generally review a trial court’s decision to admit or exclude evidence for an
abuse of discretion.[14]  See Martinez v.
State, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010), cert. denied, 131
S. Ct. 2966 (2011).  There is no error in excluding evidence pertaining to a
defense if the evidence fails to show that the defendant is entitled to rely on
the defense.  See Roy v. State, 552 S.W.2d 827, 830–31 (Tex. Crim. App.
1977), overruled in part on other grounds by Johnson v. State, 650
S.W.2d 414, 416 (Tex. Crim. App. 1983); Cyr v. State, 887 S.W.2d 203,
205 (Tex. App.—Dallas 1994, no pet.).  Thus, to show an entitlement to the
defense asserted, a defendant’s bill of exception must demonstrate that all of
the elements of the defense have been satisfied.  See Roy, 552 S.W.2d at
831.

The
necessity defense states that conduct is justified if (1) the actor reasonably
believed the conduct was immediately necessary to avoid imminent harm, (2) the
desirability and urgency of avoiding the harm clearly outweigh, according to
ordinary standards of reasonableness, the harm sought to be prevented by the
law proscribing the conduct, and (3) a legislative purpose to exclude the
justification claimed for the conduct does not otherwise plainly appear.[15] 
See Tex. Penal Code Ann. § 9.22 (West 2011).  The first prong of the
necessity defense requires evidence of both immediate necessity and imminent
harm, and if proof in support of either of these elements is missing, the trial
court does not err by excluding evidence relating to the defense.  See Stefanoff
v. State, 78 S.W.3d 496, 500–01 (Tex. App.—Austin 2002, pet. ref’d); Roy,
552 S.W.2d at 831.

Section
9.22(1) requires the defendant to first bring forth evidence of a specific
imminent harm.  See Stefanoff, 78 S.W.3d at 500 (citing Tex.
Penal Code Ann. § 9.22(1)); Pennington v. State, 54 S.W.3d 852, 857
(Tex. App.—Fort Worth 2001, pet. ref’d).  “Harm is imminent when there is an
emergency situation and it is ‘immediately necessary’ to avoid that harm.  In
other words, a split-second decision is required without time to consider the law.” 
Jackson v. State, 50 S.W.3d 579, 595 (Tex. App.—Fort Worth 2001, pet.
ref’d) (citations omitted).  “Imminent” requires more than a generalized fear
of harm.  See Brazelton v. State, 947 S.W.2d 644, 648 (Tex. App.—Fort
Worth 1997, no pet.); Bobo v. State, 757 S.W.2d 58, 63 (Tex. App.—Houston
[14th Dist.] 1988, pet. ref’d) (stating that a suggestion of the possibility of
harm will not suffice to support a necessity defense), cert. denied, 490
U.S. 1066 (1989).

Next,
a defendant must establish facts indicating a reasonable belief that the
criminal conduct was immediately necessary to avoid the imminent harm.  See
Stefanoff, 78 S.W.3d at 501; Pennington, 54 S.W.3d at 857. 
“Reasonable belief” means a belief that would be held by an ordinary and
prudent person in the same circumstances as the defendant.  See Tex.
Penal Code Ann. § 1.07(a)(42) (West Supp. 2012).  Reasonableness is determined
from the defendant’s viewpoint at the time of the conduct.  See Stefanoff,
78 S.W.3d at 501.  A defendant’s sincere belief that his conduct is immediately
necessary to avoid imminent harm is unreasonable as a matter of law if the
undisputed facts demonstrate a complete absence of “immediate necessity” or
“imminent harm” as legally defined.  See Dewalt, 307 S.W.3d at
454.

Analysis

Appellant
contends that he clearly demonstrated the elements of “immediately necessary”
and “imminent harm” because (1) he entered the Gold Nugget to locate a patron
in order to assist him in jump starting his car on a cold January night, (2) he
believed he was still in danger at that very moment and feared Chatman, and (3)
there was no reason to believe that Chatman no longer worked as a bouncer at
the Gold Nugget that night.  In support, Appellant relies on Vasquez v.
State, 830 S.W.2d 948, 950–51 (Tex. Crim. App. 1992).

Vasquez
was charged with possession of a firearm by a felon.  Id. at 950. 
Vasquez testified that ex-members of a prison gang kidnapped him and held him
hostage.  Id.  He said he was able to escape by grabbing a gun when the
man guarding him was distracted.  Id.  Afterwards he was seen walking
through a parking lot with the gun and was subsequently arrested.  Id. 
Vasquez claimed ineffective assistance of counsel because trial counsel failed
to request a jury instruction on the necessity defense.  Id. at 949–50. 
The court of criminal appeals found trial counsel ineffective, stating, “Under
the facts of this case, it would have been error for the trial court to refuse
such an instruction, had one been requested.”  Id. at 951.

In
the present case, Appellant’s evidence merely demonstrated that he possessed a
generalized fear of Chatman; there was no evidence that he was facing “imminent
harm” at the hands of Chatman.  See Johnson, 650 S.W.2d at 416 (holding
that a feeling that one is in a “high crime” area would not constitute a
reasonable belief that unlawfully carrying a weapon is immediately necessary to
avoid imminent harm), overruled in part on other grounds by Boget
v. State, 74 S.W.3d 23, 31 (Tex. Crim. App. 2002); Garcia v. State,
972 S.W.2d 848, 849 (Tex. App.—Beaumont 1998, no pet.) (“The fact that one must
go in harm’s way does not create an immediate necessity to avoid imminent
harm.”).  We conclude that Appellant presented no evidence that he encountered
an “emergency situation” necessitating a “split-second decision made without
time to consider the law” that distinguishes “imminent harm” and can raise a
necessity defense.

Because
the undisputed facts demonstrate the absence of “imminent harm,” Appellant’s
belief that possessing a firearm was immediately necessary to avoid this
perceived “imminent harm” was unreasonable as a matter of law.  See Dewalt,
307 S.W.3d at 454, 456; Trove v. State, No. 03-04-00578-CR, 2007 WL
3390874, at *5 (Tex. App.—Austin Nov. 14, 2007, no pet.) (mem. op., not
designated for publication) (“There is no evidence of imminent harm or of a
reasonable belief that immediate actions was necessary to avoid imminent
harm.”).  Accordingly, the trial court did not abuse its discretion by
concluding that Appellant did not raise a necessity defense, and it did not
abuse its discretion by excluding the evidence Appellant sought to present to
prove that defense.

Jury
Charge Instruction

Generally,
a defendant is entitled to a jury instruction on every defensive issue raised
by the evidence.  Allen v. State, 253 S.W.3d 260, 267 (Tex. Crim. App.
2008).  A defense is supported or raised by the evidence “if there is some
evidence, from any source, on each element of the defense that, if believed by
the jury, would support a rational inference that that element is true.”  Shaw,
243 S.W.3d at 657–58.  The defendant bears the burden of showing some evidence
exists to support each element of the defense.  Juarez v. State, 308
S.W.3d 398, 404 (Tex. Crim. App. 2010); Shaw, 243 S.W.3d at 657–58. 
When reviewing a trial court’s decision to deny a requested defensive
instruction, “we view the evidence in the light most favorable to the
defendant’s requested submission.”  Bufkin v. State, 207 S.W.3d 779, 782
(Tex. Crim. App. 2006).  A trial court may refuse an instruction on a defensive
theory, however, if the issue was not raised by the evidence.  See Shaw,
243 S.W.3d at 657–58.

Viewed
in the light most favorable to Appellant’s requested submission, and as set out
above in the opinion, the evidence did not raise the necessity defense.  See
Washington v. State, 152 S.W.3d 209, 211–13 (Tex. App.—Amarillo 2004, no
pet.) (holding necessity instruction not warranted in prosecution for unlawful
possession of a firearm, where appellant argued that he removed his
grandfather’s gun from the coffee table and put it in his pocket before
children due home from school would find it).  Thus, the trial court did not
abuse its discretion by refusing a jury instruction on this issue.  We overrule
Appellant’s second point.

Conclusion

Having
overruled Appellant’s two points, we affirm the trial court’s judgment.

 

 

ANNE GARDNER

JUSTICE

 

PANEL: 
LIVINGSTON, C.J.; GARDNER and MEIER, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  January 31, 2013









[1]See Tex. R. App. P. 47.4.





[2]See Tex. Penal Code Ann. § 46.04 (West 2011).





[3]Appellant does not argue that we should analyze his state and
federal claims differently.  Thus, we do not address any potential distinction
between Appellant’s claims and resolve them under the federal constitution.  See
Hubert v. State, 312 S.W.3d 554, 558 n.8 (Tex. Crim. App. 2010).





[4]We consider only the evidence adduced at the suppression hearing
because the ruling was based on this evidence and not on the evidence
introduced at trial.  See Gutierrez v. State, 221 S.W.3d 680, 687 (Tex.
Crim. App. 2007); Rachal v. State, 917 S.W.2d 799, 809 (Tex. Crim.
App.), cert. denied, 519 U.S. 1043 (1996).  Here, Appellant stated on
the record that he did not consent to relitigating the suppression issue during
the trial on the merits.





[5]Although it is not entirely clear that Cisneros was the one who called
911, the record demonstrates that she thought Appellant was committing criminal
trespass.





[6]Officer Harper testified on cross-examination that officers are
briefed prior to their shifts about safety issues but that he could not recall
the exact date officers were told about Appellant.  Officer Harper testified
that he did not know whether Appellant had ever been charged with threatening a
police officer.





[7]It is a felony offense to unlawfully carry a handgun on any
premises licensed or issued a permit by the State for the sale of alcoholic
beverages.  See Tex. Penal Code Ann. §
46.02(a), (c) (West Supp. 2012).  The State ultimately charged Appellant with unlawful possession of
a firearm by a felon.  See id. § 46.04.





[8]The Derichsweiler court cited several federal cases in
support, including United States v. Whitaker, 546 F.3d 902, 909 n.12
(7th Cir. 2008) (“911 [reports] by identified callers
can provide the police with reasonable suspicion and . . . 911 employees are
part of the police collective.”); United States v. Ruidiaz, 529 F.3d 25
(1st Cir. 2008) (officer could rely on information passed on by 911 dispatcher
in formulating reasonable suspicion).  See 348 S.W.3d at 914 n.33; see also United States v. Vickers, 540 F.3d
356, 361 (5th Cir. 2008) (“[The] burglary victim not only gave his name, he
also provided several other pieces of information to identify himself and the
burglar.  The 911 call in this case was sufficiently detailed that the police
were justified in relying on it to establish reasonable suspicion.”).





[9]Appellant
did not specifically challenge the reliability of the citizen-informant at the
suppression hearing, and he does not specifically address this issue on appeal.





[10]There was testimony that the dealership and the Gold Nugget shared
a parking lot and that it took approximately thirty seconds to walk from the
dealership to the bar.





[11]Godinez testified that two men broke into her apartment and
demanded to know, “Where is the money?”  One of the men hit her and held a gun
on her.  The other man searched until he found Appellant’s money.





[12]Detective Caleb Blank testified that he was assigned to this
robbery case, that Chatman was a person of interest, that neither of the people
who entered Godinez’s apartment that night was Chatman, that there was not
enough evidence to arrest Chatman, and that he closed the case four months
after the offense.





[13]Defense witness Clint Worley had previously testified in the jury’s
presence that Appellant had come into the Gold Nugget that morning right before
closing time, looking for a friend named Joey and
stating that he “need[ed] a jump off his car.”  Worley went to locate Joey, and when he returned, Appellant was being
escorted out of the bar by police officers.  Appellant also testified that the morning of the offense, he had assisted the
manager of the bar next door in jump starting her car.





[14]A trial court’s exclusion of evidence may rise to the level of a
constitutional violation if the ruling excludes otherwise relevant and reliable
evidence which “forms such a vital portion of the case that exclusion
effectively precludes the defendant from presenting a defense.”  Wiley v.
State, 74 S.W.3d 399, 405 (Tex. Crim. App.) (quoting Potier v.
State, 68 S.W.3d 657, 665 (Tex. Crim. App. 2002)), cert. denied,
537 U.S. 949 (2002).  “Erroneous evidentiary rulings rarely rise to the level of denying the fundamental constitutional
rights to present a meaningful defense.”  Potier, 68 S.W.3d at 663.





[15]In addition to the statutory elements, the court of criminal
appeals has held that a defendant must present
evidence “essentially admit[ting] to every element of the offense including the
culpable mental state” in order to raise a necessity defense.  See Dewalt
v. State, 307 S.W.3d 437, 454
(Tex. App.—Austin 2010, pet. ref’d)
(citing Shaw v. State, 243 S.W.3d 647, 659 (Tex. Crim. App.
2007)).  The State does not dispute that Appellant admitted to the elements of
the offense.