

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00155-CR

| | | |
|---|---|---|
| Joe A. Miller | § | From the 213th District Court |
| | § | of Tarrant County (1188460D) |
| v. | § | January 31, 2013 |
| | § | Opinion by Justice Gardner |
| The State of Texas | § | (nfp) |

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was no error in the trial court's judgment. It is ordered that the judgment of the trial court is affirmed.

SECOND DISTRICT COURT OF APPEALS

By_____
Justice Anne Gardner



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00155-CR

JOE A. MILLER                                                    APPELLANT

V.

THE STATE OF TEXAS                                              STATE

----------

### FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### Introduction

A jury convicted Appellant Joe A. Miller of unlawful possession of a firearm by a felon,[2] and the trial court sentenced him to five years in prison. In two points, Appellant asserts that the trial court erred (1) by denying his motion to

---

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. Penal Code Ann. § 46.04 (West 2011).

suppress and (2) by excluding his evidence in support of, and by failing to instruct the jury on, the necessity defense. We affirm.

## Motion to Suppress

In his first point, Appellant asserts that the trial court erred by denying his motion to suppress because the arresting officers did not have reasonable suspicion to detain and search him in violation of his Fourth Amendment rights; article I, section 9 of the Texas Constitution; and article 38.23 of the code of criminal procedure.[3]

**Testimony and Trial Court Ruling at Suppression Hearing[4]**

Arlington Police Officer Nicholas Harper testified that at approximately 1:50 a.m. on January 9, 2010, he and Officer David Kubinsky were dispatched to the Gold Nugget Bar. The dispatcher relayed that a 911 caller had reported a criminal trespass in progress at the bar. Officer Harper explained that "the caller at the location believed that a suspect was inside the bar who had previously

---

[3]Appellant does not argue that we should analyze his state and federal claims differently. Thus, we do not address any potential distinction between Appellant's claims and resolve them under the federal constitution. *See Hubert v. State*, 312 S.W.3d 554, 558 n.8 (Tex. Crim. App. 2010).

[4]We consider only the evidence adduced at the suppression hearing because the ruling was based on this evidence and not on the evidence introduced at trial. *See Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007); *Rachal v. State*, 917 S.W.2d 799, 809 (Tex. Crim. App.), *cert. denied*, 519 U.S. 1043 (1996). Here, Appellant stated on the record that he did not consent to relitigating the suppression issue during the trial on the merits.

been given a criminal trespass warning from the location." The officers were provided a description of the suspect but not a name.

When the officers entered the Gold Nugget, Officer Harper spoke to the bartender, Pricilla Cisneros, while Officer Kubinsky scanned the bar for the suspect. As Officer Kubinsky approached and detained the suspect, Cisneros confirmed that the detained individual was the person she thought was criminally trespassing.[5] Officer Harper testified that he and Officer Kubinsky escorted the suspect out of the bar, explaining that they needed to identify him and to determine whether he was listed on the department's criminal trespass log "as is our procedure when we go on those type [of] calls." The officer further explained,

> [I]t's very loud inside the bar, and the music is playing. It's hard to talk on the [radio], so we are actually trained for most calls inside locations where it's a club or a bar, if the situation allows, to take the suspect outside so we can deal with them in a more safe manner for officers.

Once outside, the suspect provided information and identified himself as Appellant, and Officer Kubinsky attempted to confirm whether he was listed on the department's criminal trespass log. At the same time, Officer Harper began to pat down Appellant. When asked why he frisked Appellant for weapons, Officer Harper responded that "[w]e had actually been told by our department that the suspect had previously threatened officers with harm on a separate call,

---

[5]Although it is not entirely clear that Cisneros was the one who called 911, the record demonstrates that she thought Appellant was committing criminal trespass.

4

and I actually recognized this suspect as the individual that we were warned that he threatened to hurt officers [previously]."[6]  Officer Harper explained that, given Appellant's history, he thought Appellant might be armed and that his jacket might be concealing a weapon.  Officer Harper testified that Appellant attempted to guard the back portion of his waistline by making it appear "as if he could not move his arms back."  When Officer Harper moved Appellant's arms, Appellant's jacket flipped to the side, and Officer Harper saw a pistol sticking out of Appellant's waistband.  Officer Kubinsky took custody of and unloaded the .45 caliber pistol.  At that time, the officers did not know that Appellant was a felon, and they arrested him for the unlawful carrying of a weapon inside the Gold Nugget.[7]  Meanwhile, the officers discovered that Appellant was not listed in the department's criminal trespass log.

The trial court made the following findings on the record:

The officer of the Arlington police department was dispatched to the Golden Nugget Bar in response to a criminal trespass call.  They had been given a description of the person that the caller suggested had trespassed at the location.

---

[6]Officer Harper testified on cross-examination that officers are briefed prior to their shifts about safety issues but that he could not recall the exact date officers were told about Appellant.  Officer Harper testified that he did not know whether Appellant had ever been charged with threatening a police officer.

[7]It is a felony offense to unlawfully carry a handgun on any premises licensed or issued a permit by the State for the sale of alcoholic beverages.  *See* Tex. Penal Code Ann. § 46.02(a), (c) (West Supp. 2012).  The State ultimately charged Appellant with unlawful possession of a firearm by a felon.  *See id.* § 46.04.

Once the officer arrived, they talked with the bartender, who confirmed that the Defendant was a person to whom she felt -- of whom she felt was trespassing. The Defendant matched the description that was given by the caller as being a person who was either -- appeared to be either Hispanic or a white male wearing a khaki jacket. . . .

Officer approached the Defendant, took Defendant outside the bar. Officer Harper conducted a Terry frisk, or pat down. . . . During the course of that, Officer Harper noticed the butt of a gun. Officer seized the gun.

The Court . . . therefore finds that there's no violation of Article 38.23 of the Texas Code of Criminal [P]rocedure.

**Standard of Review**

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-

6

of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *Kelly*, 204 S.W.3d at 818–19. We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id.* at 818.

**Applicable Law**

The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. Const. amend. IV; *Wiede*, 214 S.W.3d at 24. To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Amador*, 221 S.W.3d at 672; *see Young*

7

*v. State*, 283 S.W.3d 854, 872 (Tex. Crim. App.), *cert. denied*, 130 S. Ct. 1015 (2009). A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant. *Amador*, 221 S.W.3d at 672. Once the defendant has made this showing, the burden of proof shifts to the State, which is then required to establish that the search or seizure was conducted pursuant to a warrant or was reasonable. *Id.* at 672–73; *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

A detention, as opposed to an arrest, may be justified on less than probable cause if a person is reasonably suspected of criminal activity based on specific, articulable facts. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968); *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). An officer conducts a lawful temporary detention when he has reasonable suspicion to believe that an individual is violating the law. *Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010); *Ford*, 158 S.W.3d at 492. Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific, articulable facts that when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity. *Ford*, 158 S.W.3d at 492. This is an objective standard that disregards any subjective intent of the detaining officer and looks solely to whether an objective basis for the detention exists. *Id.*

Once a suspect has been lawfully detained, an officer may conduct a limited search for weapons, or a "protective frisk," when a frisk is reasonably warranted for the officer's safety and for the safety of others. *See Terry*, 392 U.S. at 27, 88 S. Ct. at 1883; *Balentine v. State*, 71 S.W.3d 763, 769 (Tex. Crim. App. 2002). A pat-down search for weapons or contraband without a warrant is justified only when specific and articulable facts, when taken together with rational inferences from those facts, reasonably could lead to the conclusion that the suspect might possess a weapon. *See Terry*, 392 U.S. at 27, 29–31, 88 S. Ct. at 1883, 1884–85; *Carmouche*, 10 S.W.3d at 329–30. The officer need not be absolutely certain that an individual is armed; the issue is whether a reasonably prudent person justifiably would believe that he or others were in danger. *See Balentine*, 71 S.W.3d at 769; *O'Hara v. State*, 27 S.W.3d 548, 551 (Tex. Crim. App. 2000).

**Analysis**

Appellant asserts that Officer Harper's "own testimony supports a finding of no reasonable suspicion to justify the detention and search of [his] person and, therefore, the evidence obtained subsequent to said illegal detention must be suppressed." Appellant relies on Officer Harper's testimony on cross-examination as follows:

> Q. . . . How long after you had found the gun, conducted this search of my client -- how long after that did you get the information confirming that he indeed had been issued a trespass warning for that particular establishment?

9

A. I did not.

Q. Who did?

A. None of us did.

Q. Okay. Explain further.

A. Okay. He was not actually listed in our criminal trespass log, so --

. . . .

Q. Okay. And when did you ever -- after that, when did you get the confirmation from CIC that he was not on the criminal trespass [log]?

A. I believe we got that confirmation after we had him in custody, and the situation was made safe, and then Officer Kubinsky was able to resume his record was checked [sic].

Q. Okay. So you agree or disagree with me is all right. But for you going to that location pursuant to a dispatch for criminal trespass, but for that, do you agree you would have never had this man detained and been reaching into his waistline conducting any type of pat down or search?

A. I wouldn't say never, but it's probably unlikely.

Citing *Crain v. State*, Appellant contends that he was not committing a criminal offense at the time of the detention and that Officer Harper "exceeded the scope of any alleged *Terry* detention when he conducted a pat down search on [him] without even knowing if [he] was, in fact, criminally trespassing." *See* 315 S.W.3d at 53.

In *Crain*, the court of criminal appeals held that the arresting police officer did not have reasonable suspicion to detain Crain. *Crain* is inapposite to the

10

instant case, however. The facts leading up to the officer's contact with Crain were that Crain was walking late at night in a residential area in which burglaries occurred mostly after midnight, and Crain "grabb[ed] at his waist" when he saw the police officer's vehicle drive past him. 315 S.W.3d at 53. The court of criminal appeals explained that,

> [t]his combination of circumstances motivated [Officer] Griffin to return to the area after he responded to a theft call. At the time Griffin returned to talk to the appellant, he had neither any intention nor reason to arrest the appellant. No evidence was produced demonstrating that Griffin believed the appellant was engaged in criminal activity at the time . . . .
>
> During cross-examination, Griffin agreed that there were "[a] hundred different things [the appellant] could have been doing . . ." at the time he reached for his waistband and that the fact that the appellant had reached for his waistband did not necessarily mean that criminal activity was afoot. Further, [Griffin testified] during cross, [that] there were no burglaries reported for that residential area on the evening of the appellant's arrest. . . .
>
> . . . Griffin did not offer any testimony that might have raised his suspicion that the appellant was engaged in criminal activity before he approached the appellant and smelled marihuana on him. We find no other indicia of reasonable suspicion on the record before us.

*Id.*

We conclude that in the instant case, the officers had reasonable suspicion to detain Appellant. The 911 dispatcher advised Officers Harper and Kubinsky that a caller had reported a criminal trespass in progress at the Gold Nugget. *See Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App.) (stating that a 911 police dispatcher is ordinarily regarded as a "cooperating officer" in

11

determining whether reasonable suspicion exists), *cert. denied*, 132 S. Ct. 150 (2011).[8] When the officers arrived at the Gold Nugget, Officer Kubinsky detained Appellant, who matched the description of the suspected criminal trespasser, and the bartender confirmed that Appellant had been the subject of the 911 call.[9] *See Brother v. State*, 166 S.W.3d 255, 258 (Tex. Crim. App. 2005) (finding reasonable suspicion for investigative detention based on information supplied by citizen-informant), *cert. denied*, 546 U.S. 1150 (2006); *see also State v. Garcia*, 25 S.W.3d 908, 912–13 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (commenting that the reliability of the information from an individual who presents himself to an officer in person and whose identity might easily be traced is increased); *State v. Sailo*, 910 S.W.2d 184, 188 (Tex. App.—Fort Worth 1995, pet. ref'd) (explaining that "information from a citizen who confronts an officer in person to advise the officer that a designated individual present on the scene is committing a specific crime should be given serious attention and great weight by

---

[8]The *Derichsweiler* court cited several federal cases in support, including *United States v. Whitaker*, 546 F.3d 902, 909 n.12 (7th Cir. 2008) ("911 [reports] by identified callers can provide the police with reasonable suspicion and . . . 911 employees are part of the police collective."); *United States v. Ruidiaz*, 529 F.3d 25 (1st Cir. 2008) (officer could rely on information passed on by 911 dispatcher in formulating reasonable suspicion). *See* 348 S.W.3d at 914 n.33; *see also United States v. Vickers*, 540 F.3d 356, 361 (5th Cir. 2008) ("[The] burglary victim not only gave his name, he also provided several other pieces of information to identify himself and the burglar. The 911 call in this case was sufficiently detailed that the police were justified in relying on it to establish reasonable suspicion.").

[9]Appellant did not specifically challenge the reliability of the citizen-informant at the suppression hearing, and he does not specifically address this issue on appeal.

the officer"). This information was sufficient for the officers to temporarily detain Appellant. *See generally Derichsweiler*, 348 S.W.3d at 916–17. That the officers ultimately discovered that Appellant was not on the criminal trespass log does not vitiate the officer's actions in hindsight. *See Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001) (holding that it is not necessary to show with absolute certainty that a crime has occurred in order to show reasonable suspicion); *see also Parson v. State*, No. 11-10-00244-CR, 2012 WL 4951183, at *4 (Tex. App.—Eastland Oct. 18, 2012, no pet.) (op. on reh'g) ("A mistake about the facts, if reasonable, will not vitiate an officer's actions in hindsight so long as his actions were lawful under the facts as he reasonably, albeit mistakenly, perceived them to be.") (citing *Robinson v. State*, 377 S.W.3d 712, 720–22 (Tex. Crim. App. 2012)).

We also conclude that the officers were justified in conducting a pat down of Appellant. After detaining Appellant, the officers escorted him out of the bar so that they could further investigate the trespass allegation in a quieter, safer place, as they had been trained. Officer Harper explained that, once outside, Officer Kubinsky began checking to see if Appellant was listed on the criminal trespass log, and he (Officer Harper) conducted a pat down on Appellant. Officer Harper explained that he recognized Appellant as someone who had previously threatened to hurt policemen and that Appellant's jacket could have been concealing a weapon. We conclude that a reasonable officer in Officer Harper's position would be justified in believing that Appellant might have been armed and

13

dangerous. *See Martinez v. State*, 236 S.W.3d 361, 369–70 (Tex. App.—Fort Worth 2007, pet. dism'd) (holding that "the issue is whether a reasonably prudent officer in the same circumstances would be warranted in believing that his safety or that of others is in danger"); *see also Glazner v. State*, 175 S.W.3d 262, 265 (Tex. Crim. App. 2005) (holding that the officer does not have to feel personally threatened, and he does not have to be absolutely certain that the suspect is armed in order to conduct a pat-down search).

Appellant argues that Officer Harper should have waited to conduct a pat down search until Officer Kubinsky determined whether Appellant was, in fact, criminally trespassing. However, "[t]he purpose of a *Terry* [pat-down] search is to neutralize a potentially volatile situation and allow an officer to investigate without fear of violence." *Martinez*, 236 S.W.3d at 369; *see Davis v. State*, 829 S.W.2d 218, 220 (Tex. Crim. App. 1992) (op. on reh'g) (purpose of limited frisk is to allow officer to pursue investigation without fear of violence, not to discover evidence of a crime); *see also Griffin v. State*, 215 S.W.3d 403, 409 (Tex. Crim. App. 2006) (noting that "[p]olice knowledge of appellant's past illegal drug activity" was one of several specific and articulable circumstances supporting a finding that the police reasonably suspected that the appellant was selling cocaine). For the above reasons, the trial court did not abuse its discretion by denying Appellant's motion to suppress. We overrule Appellant's first point.

14

**Necessity Defense**

In his second point, Appellant asserts that the trial court abused its discretion by excluding the evidence he proffered in support of, and by failing to instruct the jury on, the necessity defense. Appellant maintains that, by preventing him from presenting this evidence, the trial court infringed on his right to mount a meaningful defense.

**Pertinent Facts**

During his case in chief, Appellant attempted to introduce evidence in support of a necessity defense. Appellant explained generally that he wished to introduce evidence that he and his girlfriend were the victims of an armed robbery one month before the instant offense and that Appellant always carried a gun with him after that. The trial court preliminarily sustained the State's relevancy objection, and Appellant presented a bill of exception outside the jury's presence.

At the hearing, Appellant testified that he operated a car dealership and that on December 12, 2009, he possessed a large sum of cash from car sales that day. At approximately 10:30 p.m., Appellant walked to the nearby Gold Nugget to meet his girlfriend, Angelica Godinez.[10] While at the bar, Appellant ran into Eric Chatman, the bouncer at the bar. Chatman noticed that Appellant had

---

[10]There was testimony that the dealership and the Gold Nugget shared a parking lot and that it took approximately thirty seconds to walk from the dealership to the bar.

several hundred dollar bills in his pocket and commented, "Oh, I see you're a baller; you're loaded." Godinez then arrived, and the two drank beer and left about an hour and fifteen minutes later. Appellant and Godinez drove to Godinez's nearby apartment. On the way, Appellant began to feel "weird" and "sleepy," and once inside the apartment, he went to sleep immediately. Appellant was later awakened by Arlington police officers, who told him that Godinez had been robbed and assaulted while he was asleep.[11] Appellant believed he had been drugged at the Gold Nugget that evening and that Chatman "had something to do" with the robbery.[12] Appellant further testified that the robbery caused him to fear for his and Godinez's safety and that he therefore purchased a firearm and "start[ed] carrying" it.

Appellant testified that when he walked into the Gold Nugget twenty-eight days after the robbery, he felt it was immediately necessary to possess a firearm to avoid "imminent harm" because Chatman still worked there.[13] Appellant

---

[11]Godinez testified that two men broke into her apartment and demanded to know, "Where is the money?" One of the men hit her and held a gun on her. The other man searched until he found Appellant's money.

[12]Detective Caleb Blank testified that he was assigned to this robbery case, that Chatman was a person of interest, that neither of the people who entered Godinez's apartment that night was Chatman, that there was not enough evidence to arrest Chatman, and that he closed the case four months after the offense.

[13]Defense witness Clint Worley had previously testified in the jury's presence that Appellant had come into the Gold Nugget that morning right before closing time, looking for a friend named Joey and stating that he "need[ed] a jump off his car." Worley went to locate Joey, and when he returned, Appellant

16

admitted that he was a convicted felon and that he intentionally or knowingly possessed a firearm away from the premises where he lived. The trial court denied Appellant's request to introduce the proffered evidence.

## Exclusion of Evidence

### Standard of Review and Applicable Law

We generally review a trial court's decision to admit or exclude evidence for an abuse of discretion.[14] *See Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010), *cert. denied*, 131 S. Ct. 2966 (2011). There is no error in excluding evidence pertaining to a defense if the evidence fails to show that the defendant is entitled to rely on the defense. *See Roy v. State*, 552 S.W.2d 827, 830–31 (Tex. Crim. App. 1977), *overruled in part on other grounds by Johnson v. State*, 650 S.W.2d 414, 416 (Tex. Crim. App. 1983); *Cyr v. State*, 887 S.W.2d 203, 205 (Tex. App.—Dallas 1994, no pet.). Thus, to show an entitlement to the defense asserted, a defendant's bill of exception must demonstrate that all of the elements of the defense have been satisfied. *See Roy*, 552 S.W.2d at 831.

---

was being escorted out of the bar by police officers. Appellant also testified that the morning of the offense, he had assisted the manager of the bar next door in jump starting her car.

[14]A trial court's exclusion of evidence may rise to the level of a constitutional violation if the ruling excludes otherwise relevant and reliable evidence which "forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense." *Wiley v. State*, 74 S.W.3d 399, 405 (Tex. Crim. App.) (quoting *Potier v. State*, 68 S.W.3d 657, 665 (Tex. Crim. App. 2002)), *cert. denied*, 537 U.S. 949 (2002). "Erroneous evidentiary rulings rarely rise to the level of denying the fundamental constitutional rights to present a meaningful defense." *Potier*, 68 S.W.3d at 663.

The necessity defense states that conduct is justified if (1) the actor reasonably believed the conduct was immediately necessary to avoid imminent harm, (2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct, and (3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.[15]  *See* Tex. Penal Code Ann. § 9.22 (West 2011).  The first prong of the necessity defense requires evidence of both immediate necessity and imminent harm, and if proof in support of either of these elements is missing, the trial court does not err by excluding evidence relating to the defense.  *See Stefanoff v. State*, 78 S.W.3d 496, 500–01 (Tex. App.—Austin 2002, pet. ref'd); *Roy*, 552 S.W.2d at 831.

Section 9.22(1) requires the defendant to first bring forth evidence of a specific imminent harm.  *See Stefanoff*, 78 S.W.3d at 500 (citing Tex. Penal Code Ann. § 9.22(1)); *Pennington v. State*, 54 S.W.3d 852, 857 (Tex. App.—Fort Worth 2001, pet. ref'd).  "Harm is imminent when there is an emergency situation and it is 'immediately necessary' to avoid that harm.  In other words, a split-

---

[15]In addition to the statutory elements, the court of criminal appeals has held that a defendant must present evidence "essentially admit[ting] to every element of the offense including the culpable mental state" in order to raise a necessity defense.  *See Dewalt v. State*, 307 S.W.3d 437, 454 (Tex. App.—Austin 2010, pet. ref'd) (citing *Shaw v. State*, 243 S.W.3d 647, 659 (Tex. Crim. App. 2007)).  The State does not dispute that Appellant admitted to the elements of the offense.

second decision is required without time to consider the law." *Jackson v. State*, 50 S.W.3d 579, 595 (Tex. App.—Fort Worth 2001, pet. ref'd) (citations omitted). "Imminent" requires more than a generalized fear of harm. *See Brazelton v. State*, 947 S.W.2d 644, 648 (Tex. App.—Fort Worth 1997, no pet.); *Bobo v. State*, 757 S.W.2d 58, 63 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd) (stating that a suggestion of the possibility of harm will not suffice to support a necessity defense), *cert. denied*, 490 U.S. 1066 (1989).

Next, a defendant must establish facts indicating a reasonable belief that the criminal conduct was immediately necessary to avoid the imminent harm. *See Stefanoff*, 78 S.W.3d at 501; *Pennington*, 54 S.W.3d at 857. "Reasonable belief" means a belief that would be held by an ordinary and prudent person in the same circumstances as the defendant. *See* Tex. Penal Code Ann. § 1.07(a)(42) (West Supp. 2012). Reasonableness is determined from the defendant's viewpoint at the time of the conduct. *See Stefanoff*, 78 S.W.3d at 501. A defendant's sincere belief that his conduct is immediately necessary to avoid imminent harm is unreasonable as a matter of law if the undisputed facts demonstrate a complete absence of "immediate necessity" or "imminent harm" as legally defined. *See Dewalt*, 307 S.W.3d at 454.

**Analysis**

Appellant contends that he clearly demonstrated the elements of "immediately necessary" and "imminent harm" because (1) he entered the Gold Nugget to locate a patron in order to assist him in jump starting his car on a cold

19

January night, (2) he believed he was still in danger at that very moment and feared Chatman, and (3) there was no reason to believe that Chatman no longer worked as a bouncer at the Gold Nugget that night. In support, Appellant relies on *Vasquez v. State*, 830 S.W.2d 948, 950–51 (Tex. Crim. App. 1992).

Vasquez was charged with possession of a firearm by a felon. *Id.* at 950. Vasquez testified that ex-members of a prison gang kidnapped him and held him hostage. *Id.* He said he was able to escape by grabbing a gun when the man guarding him was distracted. *Id.* Afterwards he was seen walking through a parking lot with the gun and was subsequently arrested. *Id.* Vasquez claimed ineffective assistance of counsel because trial counsel failed to request a jury instruction on the necessity defense. *Id.* at 949–50. The court of criminal appeals found trial counsel ineffective, stating, "Under the facts of this case, it would have been error for the trial court to refuse such an instruction, had one been requested." *Id.* at 951.

In the present case, Appellant's evidence merely demonstrated that he possessed a generalized fear of Chatman; there was no evidence that he was facing "imminent harm" at the hands of Chatman. *See Johnson*, 650 S.W.2d at 416 (holding that a feeling that one is in a "high crime" area would not constitute a reasonable belief that unlawfully carrying a weapon is immediately necessary to avoid imminent harm), *overruled in part on other grounds by Boget v. State*, 74 S.W.3d 23, 31 (Tex. Crim. App. 2002); *Garcia v. State*, 972 S.W.2d 848, 849 (Tex. App.—Beaumont 1998, no pet.) ("The fact that one must go in harm's way

does not create an immediate necessity to avoid imminent harm."). We conclude that Appellant presented no evidence that he encountered an "emergency situation" necessitating a "split-second decision made without time to consider the law" that distinguishes "imminent harm" and can raise a necessity defense.

Because the undisputed facts demonstrate the absence of "imminent harm," Appellant's belief that possessing a firearm was immediately necessary to avoid this perceived "imminent harm" was unreasonable as a matter of law. *See Dewalt*, 307 S.W.3d at 454, 456; *Trove v. State*, No. 03-04-00578-CR, 2007 WL 3390874, at *5 (Tex. App.—Austin Nov. 14, 2007, no pet.) (mem. op., not designated for publication) ("There is no evidence of imminent harm or of a reasonable belief that immediate actions was necessary to avoid imminent harm."). Accordingly, the trial court did not abuse its discretion by concluding that Appellant did not raise a necessity defense, and it did not abuse its discretion by excluding the evidence Appellant sought to present to prove that defense.

**Jury Charge Instruction**

Generally, a defendant is entitled to a jury instruction on every defensive issue raised by the evidence. *Allen v. State*, 253 S.W.3d 260, 267 (Tex. Crim. App. 2008). A defense is supported or raised by the evidence "if there is some evidence, from any source, on each element of the defense that, if believed by the jury, would support a rational inference that that element is true." *Shaw*, 243 S.W.3d at 657–58. The defendant bears the burden of showing some evidence

21

exists to support each element of the defense. *Juarez v. State*, 308 S.W.3d 398, 404 (Tex. Crim. App. 2010); *Shaw*, 243 S.W.3d at 657–58. When reviewing a trial court's decision to deny a requested defensive instruction, "we view the evidence in the light most favorable to the defendant's requested submission." *Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006). A trial court may refuse an instruction on a defensive theory, however, if the issue was not raised by the evidence. *See Shaw*, 243 S.W.3d at 657–58.

Viewed in the light most favorable to Appellant's requested submission, and as set out above in the opinion, the evidence did not raise the necessity defense. *See Washington v. State*, 152 S.W.3d 209, 211–13 (Tex. App.—Amarillo 2004, no pet.) (holding necessity instruction not warranted in prosecution for unlawful possession of a firearm, where appellant argued that he removed his grandfather's gun from the coffee table and put it in his pocket before children due home from school would find it). Thus, the trial court did not abuse its discretion by refusing a jury instruction on this issue. We overrule Appellant's second point.

## Conclusion

Having overruled Appellant's two points, we affirm the trial court's judgment.

ANNE GARDNER
JUSTICE

PANEL:  LIVINGSTON, C.J.; GARDNER and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  January 31, 2013