**Opinion filed October 18, 2012**



# In The

# Eleventh Court of Appeals

_____

## No. 11-10-00244-CR

_____

## STANLEY PRICE PARSON A/K/A STANLEY PRICE PERRIN, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 350th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 9235-D**

## O P I N I O N

The opinion and judgment issued August 23, 2012, are withdrawn, and this court's opinion and judgment dated October 18, 2012, are substituted therefor. The State's motion for rehearing is granted.

The jury convicted Stanley Price Parson a/k/a Stanley Price Perrin of driving while intoxicated, enhanced by two prior convictions for driving while intoxicated. *See* TEX. PENAL CODE ANN. § 49.09(b)(2) (West Supp. 2012). During the punishment phase, appellant pleaded not true to two enhancement allegations. The jury found both enhancement allegations to be true

and assessed appellant's punishment at confinement for thirty years. The trial court sentenced appellant accordingly. We affirm.

## Issues Presented

Appellant presents three issues for review. In his first issue, appellant contends that the trial court erred by denying his motion to suppress that was based on the contention that the police lacked reasonable suspicion to stop him. In his second issue, appellant contends that the trial court erred by overruling his objection to the prosecutor's comment during closing argument on his postarrest silence. In his third issue, appellant contends that the trial court erred by denying his motion for new trial that was based on allegations of ineffective assistance of counsel.

## Factual and Procedural Background

Appellant filed a pretrial motion to suppress the evidence, asserting that the arresting officer lacked reasonable suspicion to justify the stop. The trial court held a hearing on the motion. Abilene Police Officer Randy Brown was the sole witness at the suppression hearing.

Officer Brown testified that, on May 31, 2009, he was working as a patrol officer. At about 7:00 p.m. on that date, Officer Brown was dispatched to a domestic disturbance call at 2842 South 5th Street. During questioning by the prosecutor, Officer Brown testified about the information that he received from his dispatcher:

> Q. Okay. And did the dispatcher give you any other information about the circumstances surrounding this disturbance?
>
> A. Yes. They informed me that the female calling in to report the disturbance was not at her residence. However, her two juvenile children were at the residence. She stated that information was relayed to her through her children that someone that she had had a relationship with in the past --

At this point, appellant's counsel lodged a hearsay objection to Officer Brown's testimony. The trial court overruled the objection, and Officer Brown's testimony continued:

> Q. So you would -- you were saying that there was enough information in the dispatch?
>
> A. That's correct.
>
> Q. And what was that?

2

A. That a male by the name of Stanley was parked across from the residence backed into a driveway facing the residence, and the female calling party stated that she, because of her relationship with Stanley in the past, was afraid for her children's safety.

The dispatcher gave Officer Brown a physical description of "Stanley" and informed Officer Brown that "Stanley" was in a dark-colored Chevrolet pickup, which was located "[d]irectly south of the residence." Officer Brown initially believed that the calling party's name was "Veronica," but he later learned that Monica Ramirez was the calling party.

Officer Brown drove to the scene. He arrived there about five minutes after he received the dispatch. As he turned onto South 5th Street from Mockingbird Street, Officer Brown immediately saw a dark Chevrolet pickup that had been backed into and parked in a driveway that was across the street from Ramirez's house. Officer Brown testified that he was about one hundred fifty feet away from the pickup when he first saw it. He said that the pickup was facing Ramirez's residence. Officer Brown saw a white male in the driver's seat of the pickup. Officer Brown testified that the man in the driver's seat was appellant. The fact that the pickup was facing Ramirez's house caused Officer Brown concern because he thought that appellant might be trying to "case the house" or to make a "speedy getaway" possible. Officer Brown testified that "[he] suspected that [appellant], in fact, was across the street from the residence, and because of [Ramirez's] information she had given over the telephone, that she did actually fear for her children's safety and that [appellant] was there to commit some sort of crime."

Officer Brown said that appellant looked at him and then drove his pickup out of the driveway. Appellant turned left onto South 5th Street and then immediately turned left onto Miller Street. Officer Brown followed appellant and activated his emergency lights on Miller Street. Appellant stopped his pickup. Officer Brown exited his patrol car and contacted appellant. Officer Brown testified that, before stopping appellant, he did not see appellant commit any kind of traffic violation or see appellant do anything that gave him a suspicion that appellant might be driving while intoxicated. Officer Brown testified that he stopped appellant based on the suspicion "that [appellant] was there to commit some sort of crime."

When he contacted appellant, Officer Brown observed that appellant had bloodshot eyes. Officer Brown testified that he smelled the odor of alcohol on appellant's breath. Officer Brown administered field sobriety tests to appellant and ultimately arrested appellant for driving while intoxicated.

3

After the suppression hearing, the trial court entered an order denying appellant's motion to suppress. The case proceeded to trial.

Ramirez was the State's first witness. She testified that she had previously been in a romantic relationship with appellant for about two years. Ramirez said that she ended the relationship in March 2009 against appellant's wishes. She also said that, in May 2009, appellant wanted to get back together with her. At that time, appellant lived in Eastland. Ramirez testified that, on May 31, 2009, appellant called her. During the call, appellant told Ramirez that he wanted her to go to Eastland. Ramirez told appellant that she did not want to go to Eastland. At about 3:00 p.m. that day, Ramirez was with a friend at the mall in Abilene. Ramirez's seventeen-year-old son and fifteen-year-old son were at her house. Ramirez testified that her sons called her and told her that appellant was outside her house. Ramirez said that she was nervous about appellant being there and that she wanted him to leave. She said that she called the police because appellant was sitting outside her house.

After Ramirez concluded her testimony, appellant re-urged his motion to suppress. Appellant's counsel argued that, based upon Ramirez's testimony, "[there was] no criminal activity afoot" and that, therefore, Officer Brown did not have reasonable suspicion to stop appellant. The trial court denied the re-urged motion to suppress.

Officer Brown also testified at trial. His trial testimony about the stop of appellant was consistent with the testimony he gave at the suppression hearing. The State offered the police video of the stop into evidence during Officer Brown's testimony. Appellant objected to the admission of the video and again re-urged his motion to suppress. The trial court admitted the video into evidence over appellant's objections.

*Standard of Review*

We review a trial court's ruling on a motion to suppress for an abuse of discretion. *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011); *Lujan v. State*, 331 S.W.3d 768, 771 (Tex. Crim. App. 2011). In reviewing a ruling on a motion to suppress, we apply a bifurcated standard of review. *Martinez*, 348 S.W.3d at 922–23; *Hubert v. State*, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010). First, we afford almost total deference to the trial court's determination of historical facts and of mixed questions of law and fact that turn on the weight or credibility of the evidence. *Martinez*, 348 S.W.3d at 922–23; *Lujan*, 331 S.W.3d at 771. Where, as here, no findings of fact were requested or filed, we view the evidence brought forward at the

4

suppression hearing in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact supported by the record. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App, 2010); *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005). Second, we review de novo the trial court's determination of pure questions of law and mixed questions of law and fact that do not depend on credibility determinations. *Martinez*, 348 S.W.3d at 923. Thus, we review de novo the issue of whether the totality of the circumstances was sufficient to support an officer's reasonable suspicion to make a stop. *Madden v. State*, 242 S.W.3d 504, 517 (Tex. Crim. App. 2007).

Ordinarily, we consider only the evidence adduced at the suppression hearing in determining whether the trial court's decision on a motion to suppress is supported by the record because the trial court's ruling was based on it rather than evidence presented later at trial. *Rachal v. State*, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996). However, where, as in this case, an appellant re-urges his motion to suppress following trial testimony, we may also consider relevant trial evidence in our review. *Id.*; *Weaver v. State*, 265 S.W.3d 523, 533, 535 n.4 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd).

*Reasonable Suspicion*

Under the Fourth Amendment, a warrantless detention of a person that amounts to less than a full-blown custodial arrest must be justified by a reasonable suspicion. *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011). A police officer has reasonable suspicion to detain if he has specific, articulable facts that, combined with rational inferences from those facts, would lead him to reasonably conclude that the person detained is, has been, or soon will be engaged in criminal activity. *Id.* This standard is an objective one that disregards the actual subjective intent of the arresting officer and looks, instead, to whether there was an objectively justifiable basis for the detention. *Id.* It also looks to the totality of the circumstances; those circumstances may all seem innocent enough in isolation, but if they combine to reasonably suggest the imminence of criminal conduct, an investigative detention is justified. *Id.* The relevant inquiry is not whether particular conduct is innocent or criminal, but the degree of suspicion that attaches to particular noncriminal acts. *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997). Moreover, the detaining officer need not be personally aware of every fact that objectively supports a reasonable suspicion to detain; rather, the cumulative information known to the cooperating officers at the time of the stop is to be considered in determining

whether reasonable suspicion exists. *Derichsweiler*, 348 S.W.3d at 914. A police dispatcher is ordinarily regarded as a "cooperating officer" for purposes of making this determination. *Id.* Finally, information provided to police from a citizen-informant who identifies himself or herself and may be held to account for the accuracy and veracity of his or her report may be regarded as reliable. *Id.* at 914–15. In such a scenario, the only question is whether the information that the known citizen-informant provides, viewed through the prism of the detaining officer's particular level of knowledge and experience, objectively supports a reasonable suspicion to believe that criminal activity is afoot. *Id.* at 915.

The facts invoked to justify an investigative detention must support more than a mere hunch or good-faith intuition that criminal activity is afoot. *Id.* at 916. To support a finding of reasonable suspicion, the specific facts articulated by the detaining officer must show some unusual activity, some evidence that connects the detainee to the unusual activity, and some indication that the unusual activity is related to a crime. *Martinez*, 348 S.W.3d at 923. However, there is no requirement that the officer suspect that a particular offense is being committed; it is enough if the facts suggest that something of an apparently criminal nature is brewing. *Derichsweiler*, 348 S.W.3d at 916–17.

*Application of Law to Facts*

Ramirez identified herself when she called the police department; therefore, she could be held to account for the accuracy and veracity of her report to the police. Under these circumstances, the information that Ramirez provided to the police may be regarded as reliable. *Id.* The dispatcher relayed the following information to Officer Brown: that Ramirez was not at her house; that Ramirez's children were at the house; that appellant had backed his dark-colored Chevrolet pickup into, and had parked it in, a driveway across the street from Ramirez's house so as to be facing her house; that appellant was sitting in the pickup; that Ramirez had been in a relationship with appellant in the past; and that, because of that past relationship, Ramirez was afraid for her children's safety.

When Officer Brown arrived at the scene, appellant was parked in the manner that Ramirez described to the dispatcher. Appellant was sitting in the driver's seat of his dark-colored Chevrolet pickup and facing Ramirez's house. These facts show that appellant was engaging in unusual and suspicious behavior. Officer Brown believed that appellant may have been casing Ramirez's house. Appellant had parked his pickup in a manner that would allow

6

him to make a speedy getaway from the scene. Officer Brown also believed that Ramirez feared for her children's safety. Appellant engaged in further unusual and suspicious behavior after Officer Brown arrived at the scene in that, as soon as he saw Officer Brown, he drove his pickup out of the driveway and away from the area. Officer Brown stopped appellant because he suspected that appellant was going to commit a domestic disturbance crime.

Based on our review of the evidence, we conclude that the totality of the circumstances, including the information that Ramirez provided the police and Officer Brown's observation of appellant's suspicious behavior, gave rise to a reasonable suspicion that appellant was about to engage in criminal activity. The facts known to Officer Brown were sufficient to suggest that something of an apparently criminal nature was brewing. *Id.* at 917. Therefore, Officer Brown had reasonable suspicion to stop appellant and to detain him for investigative purposes. *Id.* at 914. We note that appellant does not contend that Officer Brown was mistaken about any of the facts that Ramirez told the dispatcher. Even if Officer Brown were mistaken about the facts, a reasonable mistake about the facts may legitimately justify an officer's conclusion that reasonable suspicion to detain exists. *Robinson v. State*, No. PD-0238-11, 2012 WL 4092941, at *5 (Tex. Crim. App. Sept. 19, 2012). A mistake about the facts, if reasonable, will not vitiate an officer's actions in hindsight so long as his actions were lawful under the facts as he reasonably, albeit mistakenly, perceived them to be. *Id.* The trial court did not err by denying appellant's motion to suppress. Appellant's first issue is overruled.

*Jury Argument*

In his second issue, appellant contends that the trial court erred by overruling his objection to the prosecutor's comments on his postarrest silence. When the State comments on a defendant's postarrest silence, it violates the Fifth Amendment prohibition against self-incrimination. *Doyle v. Ohio*, 426 U.S. 610, 617–18 (1976); *Dinkins v. State*, 894 S.W.2d 330, 356 (Tex. Crim. App. 1995). Commenting on a defendant's postarrest silence is akin to a comment on his failure to testify at trial because it attempts to raise an inference of guilt arising from the invocation of a constitutional right. *Dinkins*, 894 S.W.2d at 356. A prosecutor's comment amounts to an impermissible comment on a defendant's postarrest silence only if, when viewed from the jury's standpoint, the comment is manifestly intended to be, or is of such a character that a typical jury would naturally and necessarily take it to be, a comment on the

7

defendant's silence. *Wead v. State*, 129 S.W.3d 126, 130 (Tex. Crim. App. 2004); *Bustamante v. State*, 48 S.W.3d 761, 765 (Tex. Crim. App. 2001).

In this case, the prosecutor made the complained-of comments during his closing argument. We will briefly summarize relevant evidence here so that the prosecutor's comments may be put in the proper context. Appellant called Tony Koch as a witness. Koch and appellant were friends. Koch testified about events that occurred on the date of appellant's arrest in this case. Koch said that, at that time, appellant was in the process of restoring the cabinets in Koch's kitchen. He said that appellant arrived at his house at about 8:00 a.m. on the day that appellant was arrested. Koch testified that appellant worked on the cabinets all day. Koch said that, at about 6:00 p.m., appellant drove him to a store so that he could buy beer. Koch said that he bought a six-pack of Coors. Appellant and Koch then went to Koch's house. Koch testified that he drank three or four of the Coors beers. He said that appellant did not drink any of the Coors beers but that appellant did drink two O'Doul's non-alcoholic beers. Koch said that, after he finished his beers, he put the empty Coors bottles in the back of appellant's pickup. He said that, at about 7:00 p.m., appellant dropped him off at a location in Abilene. Koch said that he left the unopened Coors beers in appellant's pickup.

After stopping appellant, Officer Brown approached the driver's side of appellant's pickup and spoke with him. At that time, Officer Brown saw two unopened Coors bottles in a six-pack container in the front seat next to appellant. Abilene Police Officer Shad Phillips arrived as backup at the scene. During the stop, the officers found an open Coors bottle on the floorboard by the driver's seat of appellant's pickup and five empty Coors bottles in the bed of the pickup. The audio portion of the police video of the stop demonstrates that, before arresting appellant, Officer Brown asked him whether he had been drinking. Appellant responded that he had had "a couple of beers." Appellant did not tell Officer Brown anything about O'Doul's beers. Nor did appellant tell Officer Brown that the Coors beers in his pickup belonged to someone else. Later, Officer Brown arrested appellant and gave him his *Miranda*[1] warnings. The police video also demonstrates that, in response to further questioning by Officer Brown, appellant again said that he had had "a couple of beers." In response to a follow-up question, appellant told Officer Brown that he had drunk "two beers." Appellant also said that he had

---

[1]*Miranda v. Arizona*, 384 U.S. 436 (1966).

drunk the last beer about thirty minutes earlier. Again, appellant made no mention of O'Doul's beers, and he did not say that the Coors beers belonged to someone else.

The prosecutor waived opening jury argument. Therefore, appellant's counsel argued first. During his argument, appellant's counsel relied on the testimony from Koch that Koch drank the Coors beers and that appellant drank only O'Doul's beers. Based on this testimony, appellant's counsel argued that appellant did not drink any "real" beer. The prosecutor responded to this argument in his closing argument, during which the following exchange occurred:

> [PROSECUTOR]: When [the officers] arrived on the scene and the bottles were found in the car, there was testimony given that two were found in the front seat, they were cold, and they were sitting in a container. One was found under the driver's seat, and bottles with suds were in the back, and I believe they were in a container as well. You saw the officers pour those out. Use your common sense. If you were placed in that situation, what would you believe? Oh, somebody else must have put those there. *Well, they gave [appellant] an opportunity now to tell them what's going on. They spoke a while. That's where all of this other information had an opportunity to come out.*

> [DEFENSE COUNSEL]: Judge, I'm going to object to that. That's improper argument because he's attacking [appellant] for post-Mirandized --

> [THE COURT]: Response?

> [DEFENSE COUNSEL]: That's improper.

> [THE COURT]: Response, [prosecutor]?

> [PROSECUTOR]: Your Honor, I'm merely quoting from what came from the video.

> [DEFENSE COUNSEL]: Judge, objection.

> [THE COURT]: Overruled. Please, continue.

> [PROSECUTOR]: When you take a look at the situation and [appellant] was asked, Have you been drinking, and he said, A couple of beers, did he say a couple of O'Doul's? A couple of beers. Is that something that should have really been pointed out at that point? Now, by his own statement to Officer Brown that you witnessed on this tape, he said the two beers were 30 minutes prior (emphasis added).

Appellant contends that the part of the prosecutor's argument that is italicized above constituted an improper comment on his postarrest silence.

Appellant's contention necessarily depends on the premise that he was silent after his arrest. However, the record shows that appellant did not remain silent, either before or after his arrest. He did not invoke his right to remain silent after receiving his *Miranda* warnings but, instead, answered Officer Brown's questions. By answering Officer Brown's questions, appellant waived his postarrest right to silence. *Garcia v. State*, 126 S.W.3d 921, 924 (Tex. Crim. App. 2004). Because appellant did not remain silent after his arrest, the complained-of argument by the prosecutor could not constitute a comment on postarrest silence. *Salazar v. State*, 131 S.W.3d 210, 215 (Tex. App.—Fort Worth 2004, pet. ref'd); *Maxson v. State*, 79 S.W.3d 74, 77 (Tex. App.—Texarkana 2002, pet. ref'd). Therefore, the trial court did not err by overruling appellant's objection to the prosecutor's comments.

Also, the record does not show that the complained-of statements by the prosecutor related to appellant's postarrest conduct. Before his arrest, appellant told Officer Brown that he had had "a couple of beers." At that time, appellant did not tell Officer Brown anything about O'Doul's beers or that the Coors beers in his pickup did not belong to him. The prosecutor's comments—"[w]ell, they gave [appellant] an opportunity now to tell them what's going on" and "[t]hat's where all of this other information had an opportunity to come out"—may have related to appellant's pre-arrest conduct. Thus, assuming that appellant remained silent after Officer Brown arrested him, the record does not show that the prosecutor intended to comment on appellant's postarrest silence or that a typical jury would naturally and necessarily take the prosecutor's comments as such. For this additional reason, the trial court did not err by overruling appellant's objection to the prosecutor's argument. Appellant's second issue is overruled.

*Ineffective Assistance of Counsel*

Appellant raised his ineffective-assistance-of-counsel claim in a motion for new trial. In the motion, appellant claimed that his trial counsel rendered ineffective assistance because he "failed to have X-rays taken of [appellant's] back to explain why he was not able to successfully complete the field sobriety tasks." The trial court held a hearing on appellant's motion. At the hearing, appellant testified that he had a back problem that affected his ability to satisfactorily perform the walk-and-turn test and the one-leg stand test. Appellant said that, although he told

his trial counsel about his back condition, his trial counsel failed to arrange for him to have a medical examination. Appellant also said that he told his trial counsel that he wanted to present medical evidence about his back condition to the jury but that, against his wishes, his trial counsel failed to present such evidence. Appellant believed that an X-ray would have shown the jury that his medical condition, and not intoxication, prevented him from successfully performing the field sobriety tests. Appellant's trial counsel did not testify at the hearing on appellant's motion for new trial.

To determine whether appellant's trial counsel rendered ineffective assistance, we must first determine whether appellant has shown that counsel's representation fell below an objective standard of reasonableness and, if so, then determine whether there is a reasonable probability that the result would have been different but for counsel's errors. *Wiggins v. Smith*, 539 U.S. 510 (2003); *Strickland v. Washington*, 466 U.S. 668 (1984); *Andrews v. State*, 159 S.W.3d 98 (Tex. Crim. App. 2005); *Thompson v. State*, 9 S.W.3d 808 (Tex. Crim. App. 1999). We must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and appellant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 689; *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

An allegation of ineffective assistance must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson*, 9 S.W.3d at 814. Under normal circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking as to overcome the presumption that counsel's conduct was reasonable and professional. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). Rarely will the record on direct appeal contain sufficient information to permit a reviewing court to fairly evaluate the merits of such a serious allegation. *Id.* In light of these limitations, it is well settled that claims of ineffective assistance of counsel should usually not be raised on direct appeal because the record is often undeveloped. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Andrews*, 159 S.W.3d at 103; *Thompson*, 9 S.W.3d at 813–14.

Where, as here, an appellant raised his claim of ineffective assistance of counsel in a motion for new trial, we review the trial court's denial of the motion for an abuse of discretion. *My Thi Tieu v. State*, 299 S.W.3d 216, 223 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd). A trial court abuses its discretion by denying a motion for new trial only when no reasonable view of the record could support the trial court's ruling. *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007). At a hearing on a motion for new trial, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Melton v. State*, 987 S.W.2d 72, 75 (Tex. App.—Dallas 1998, no pet.).

Appellant testified that he told his trial counsel that he wanted to present medical evidence relating to his back condition. However, there was no evidence explaining why counsel chose not to present medical evidence at trial. Therefore, the record is silent as to why appellant's trial counsel did not present any medical evidence. Because the record contains no evidence of the reasoning behind trial counsel's actions, we cannot conclude that counsel's performance was deficient. Appellant has failed to overcome the presumption that his trial counsel's conduct was reasonable and professional. *Bone*, 77 S.W.3d at 833; *Green v. State*, 191 S.W.3d 888, 894–95 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (Because the defendant failed to present evidence rebutting the presumption that trial counsel had plausible reasons for their actions, the court could not conclude that their performance was deficient.).

Additionally, we note that the police video shows that appellant told Officer Brown that he had back problems before Officer Brown administered the walk-and-turn test and the one-leg stand test. Officer Brown testified that he took appellant's back problems into consideration when he evaluated appellant's performance on those tests. Officer Brown also administered the horizontal gaze nystagmus (HGN) test on appellant. Officer Brown testified that appellant exhibited all six of the HGN clues that indicate intoxication. Appellant admitted during his testimony that his back condition did not affect his ability to perform the HGN test.

During jury argument, appellant's trial counsel relied on appellant's statement to Officer Brown that he had back problems and on Koch's testimony that appellant had worked all day. Appellant's trial counsel stated that, when Officer Brown administered the field sobriety tests, appellant was "[a] 54-year-old guy with a bad back who [had] been working all day." Appellant's trial counsel asserted that appellant being fatigued, coupled with appellant having a bad back, explained why appellant did not perform perfectly on the walk-and-turn test and the

12

one-leg stand test.  For any number of reasons, appellant's trial counsel may have decided, as a matter of trial strategy, to raise the issue of appellant's back condition in this manner rather than to present medical evidence relating to appellant's back condition.

Appellant has not shown that his trial counsel rendered ineffective assistance of counsel. The trial court did not abuse its discretion by denying appellant's motion for new trial. Appellant's third issue is overruled.

*This Court's Ruling*

The judgment of the trial court is affirmed.


TERRY McCALL

JUSTICE


October 18, 2012

Publish.  *See* TEX. R. APP. P. 47.2(b).

Panel[2] consists of: Wright, C.J.,
McCall, J., and Hill.[3]

---

[2]Eric Kalenak, Justice, resigned effective September 3, 2012.  The justice position is vacant pending appointment of a successor by the governor or until the next general election.

[3]John G. Hill, Former Chief Justice, Court of Appeals, 2nd District of Texas at Fort Worth, sitting by assignment.