**Opinion filed April 9, 2015**



In The

# Eleventh Court of Appeals

_____

## No. 11-13-00066-CR
_____

**DANNY CALAMACO, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 42nd District Court**
**Taylor County, Texas**
**Trial Court Cause No. 24442A**

### O P I N I O N

The jury convicted Danny Calamaco of murder. The trial court found two enhancement paragraphs to be true and assessed Appellant's punishment at confinement for life. *See* TEX. PENAL CODE ANN. § 19.02(b)(1) (West 2011). We affirm.

Appellant presents three issues on appeal. In his first issue, Appellant contends that the trial court denied him his right to counsel during voir dire. Appellant asserts in his second issue that he was denied effective assistance of counsel. And, in his third issue, Appellant argues that the trial court denied him

the right to a fair trial, as well as his right to be presumed innocent, when the court compelled him to stand trial before a jury while he was dressed in jail attire.

Although Appellant has not challenged the sufficiency of the evidence, we will briefly outline the evidence presented to the jury. On the date of the murder, the victim, Steven McCain, received several text messages from "Danny D." Apparently, McCain owed Appellant $10 for drugs. McCain's girlfriend, Teresa Ward, was with McCain, and she saw the texts. She testified that the "Danny D" in the texts was Appellant. The text messages were introduced into evidence. In the messages, Appellant told McCain: "It ain't about the bread. It's about principle. You think I'm a ho. You think you can do what you want to me with me, rape me, f--k me." McCain asked Ward if she had any money. She did not give him any money because she knew that he was going to take the money to Appellant, and she did not approve of his use of methamphetamine. McCain told Ward that he had to go "handle his business," and he left in Ward's van.

Anthony Sanchez stopped in front of Appellant's house. Sanchez had stopped so that he could get something out of the trunk of his car. McCain drove up behind him, got out of the van that he was driving, and started walking toward the house. A person who Sanchez believed to be Appellant came out of the house. He saw Appellant and McCain approach each other in the front yard. As they got close to each other, Appellant shot McCain. Sanchez drove away. Sanchez later returned and told police what he had seen. McCain was taken to the hospital, but he died on his way to surgery; the cause of death was a gunshot wound to the chest.

The police searched the area in the front yard where the shooting took place. They found several nine-millimeter shell casings, a lighter, and a ten-dollar bill. Appellant was subsequently arrested, indicted, tried, and convicted for the murder. This appeal follows that conviction.

We will first address Appellant's argument that the trial court denied Appellant his right to have counsel during voir dire. Voir dire is a critical stage of a criminal prosecution at which the right to counsel attaches. *Eason v. State*, 563 S.W.2d 945, 947 (Tex. Crim. App. [Panel Op.] 1978). An accused may waive his right to counsel; however, the waiver must be made voluntarily, knowingly, and intelligently. *Webb v. State*, 533 S.W.2d 780, 785 (Tex. Crim. App. 1976). An accused also has an independent right to self-representation. *Faretta v. California*, 422 U.S. 806, 821, 834 (1975); *Webb*, 533 S.W.2d at 783. The right to self-representation does not attach until it has been clearly and unequivocally asserted. *Funderburg v. State*, 717 S.W.2d 637, 642 (Tex. Crim. App. 1986) (citing *Faretta*, 422 U.S. at 835). Once a defendant has invoked his right to self-representation, the court must admonish the defendant as to the "dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Webb*, 533 S.W.2d at 785 (quoting *Faretta*, 422 U.S. at 835) (internal quotation mark omitted).

In advance of trial, the trial court appointed counsel to represent Appellant. However, on the morning of the trial, and before the voir dire examination began, Appellant told the trial court that he was not happy with his lawyer and that he wanted to represent himself. He advised the court that he had made the decision to represent himself four months prior to trial. The trial court questioned Appellant about why he wanted to represent himself; questioned him about his education, work experience, and ability to read and write; and asked whether he was currently taking any medications or had any mental condition. The trial court also admonished Appellant as to the dangers and disadvantages of representing himself. Appellant does not challenge the adequacy of those admonishments.

Although Appellant acknowledges that he waived his right to counsel, he asserts that his waiver was not made knowingly and intelligently. Specifically, he

3

alleges that his initial waiver of his right to counsel was based on the trial court's misrepresentation or misstatement of the law that he could, at any time, change his mind about self-representation. Thus, he claims, as a result of the erroneous instruction, his initial waiver of his right to counsel was not made knowingly and intelligently.

When Appellant told the trial court that he wanted to represent himself, the trial court admonished Appellant in accordance with *Faretta*. The trial court additionally told Appellant: "I mean, if you were to start to represent yourself you could say, well, this is going not like I thought it would. It's harder than I thought it would be. I want to change my mind and tell the Judge and let Mr. Sherrod start representing me." The trial court then asked Appellant: "You understand that?" The trial court also informed Appellant that his court-appointed trial counsel was going to stay in court with him, "[s]o that you can ask a question of him if you needed it, okay?" The trial court further told Appellant: "Now, listen, I told you you could change your mind. So be sure and tell me. Don't just sit there and suffer. It's not necessary. Okay? Because you're going to be missing a lot of things." The trial court then reminded Appellant: "And you've never done a voir dire and you don't even know what to say to them." After the trial court made those comments, it told Appellant that it was allowing him to represent himself.

The State then proceeded with its voir dire of the jury panel. After the State had completed its voir dire, and after Appellant had questioned the jury panel about various things—some of which the trial court did not allow—Appellant attempted to ask the jury panel whether anyone had been involved in or knew someone who had been involved in a DWI case. The trial court told Appellant that he could not ask whether someone had a DWI because it was not relevant to the case. At that point, Appellant told the trial court that he wanted "to remove my motion to represent myself and ask for Mr. Sherrod's representation" and that he

4

wanted Sherrod to finish the voir dire. The State requested the trial court's permission to approach the bench. After an unreported bench conference, the trial court informed Appellant that he needed to finish the voir dire: "You elected to do this voir dire. I can't -- ordinarily, see, you don't get to go up there at all, your lawyer does that. But now you want to do both and I can't let you do both." The trial court then told Appellant: "So if you want -- you said you wanted to do the voir dire, so you go do your voir dire and after you finish that if you want Mr. Sherrod to take over, he can take over. But you need to finish the voir dire."

We do not have the benefit of a record of what transpired during the bench conference. The State contends that the trial court might have decided that Appellant was not entitled to hybrid representation during voir dire. The State argues that Appellant did not have an absolute right to hybrid representation and that whether the trial court erred when it denied Appellant hybrid representation should be reviewed for an abuse of discretion. *See Scarbrough v. State*, 777 S.W.2d 83, 92–93 (Tex. Crim. App. 1989) (although a defendant does not have an absolute right to hybrid representation, a trial court may permit hybrid representation in its discretion and should decide whether to permit it at the "earliest practicable moment").

Although we do not know what transpired at the bench, we do know that the trial court had previously correctly told Appellant, "Now listen, I told you you could change your mind. So be sure and tell me. Don't just sit there and suffer. It's not necessary. Okay?" We also know that, after the unreported bench conference requested by the State, the trial court would not allow Appellant to change his mind, mid voir dire, about self-representation. We can see from the exchange between the trial court and Appellant that the trial court indicated to Appellant that he could change his mind about self-representation, even during the voir dire examination of the jury panel. That was not an erroneous instruction.

Article 1.051(h) of the Texas Code of Criminal Procedure provides that "[a] defendant may withdraw a waiver of the right to counsel at any time but is not entitled to repeat a proceeding previously held or waived solely on the grounds of the subsequent appointment or retention of counsel." TEX. CODE CRIM. PROC. ANN. art. 1.051(h) (West Supp. 2014). Even in the absence of Article 1.051(h), courts have held that a defendant could rescind a waiver of his right to counsel or withdraw an assertion of his right to self-representation. *See, e.g.*, *Funderburg*, 717 S.W.2d at 642. Accordingly, the trial court did not incorrectly advise Appellant that he could withdraw his waiver of counsel at any time, nor did the trial court incorrectly permit Appellant to have standby counsel. Appellant's claim that his waiver of counsel was not knowingly and intelligently made because of misstatements made by the trial court is overruled.

Appellant's complaint that his initial waiver of counsel and assertion of his right to self-representation was not made knowingly and intelligently does not stop there. He also argues that, "[b]y not allowing representation by counsel at this critical stage of the trial process in contravention of the Court's promise to Appellant, the Court denied Appellant the representation of counsel."

A defendant's right to self-representation cannot be used to obstruct the orderly procedure of the court. *Webb*, 533 S.W.2d at 784. Likewise, a defendant's withdrawal of that right cannot be used to obstruct the orderly procedure of the court. *Medley v. State*, 47 S.W.3d 17, 23–24 (Tex. App.—Amarillo 2000, pet. ref'd) (relying on *Marquez v. State*, 921 S.W.2d 217, 223 (Tex. Crim. App. 1996) (discussing withdrawal of jury waiver)).

In *Medley*, the Amarillo Court of Appeals addressed the question of the obstruction of the orderly procedure of the trial court as relative to an accused's withdrawal of his waiver of his right to counsel. *Id.* at 24. However, the *Medley* court specifically noted that, because the appellant in that case based his claim on a

6

violation of his Sixth Amendment right to counsel, it did not consider "how the statutory authorization for a defendant to withdraw a waiver of the right to counsel 'at any time' would affect the timing requirement of the request to revoke the waiver." *Id.* at 24 n.4 (citing CRIM. PROC. art. 1.051). The court wrote that, when a defendant seeks to reclaim a previously waived right to counsel, the record must "show a request to revoke the waiver sufficiently in advance of trial, such that granting the request will not: (1) interfere with the orderly administration of the business of the court, (2) result in unnecessary delay or inconvenience to witnesses, or (3) prejudice the State." *Id.* at 24.

We are not called upon to decide whether the *Medley* factors apply to a request made under Article 1.051(h) because Appellant has not asserted that the trial court violated Article 1.051(h) in this case.[1] However, even if they do apply, this record shows that counsel had been appointed in advance of trial; was present at trial, including voir dire; participated in making juror strikes; began to serve as Appellant's counsel immediately after voir dire and did so for the remainder of the trial; and did not seek a continuance. Therefore, the record shows that the factors outlined in *Medley* were met, and that showing was unrebutted by the State. *See id.* We hold that, although it correctly advised Appellant upon the law, the trial court erred when it refused to allow appointed counsel to complete the defense portion of voir dire.

---

[1]We note that the Court of Criminal Appeals has recently granted the petition for discretionary review in a case in which the Fort Worth court of Appeals applied the *Medley* test to Article 1.051(h). *Lewis v. State*, No. 02-12-00246-CR, 2014 WL 491746, at *2–5 (Tex. App.—Fort Worth Feb. 6, 2014) (mem. op., not designated for publication), *pet. granted*, (Tex. Crim App. Sept. 17, 2014) (No. PD-0307-14). The Fort Worth court held that the defendant did not meet his burden to show that his request, made immediately before the jury panel was seated, would not interfere with the orderly administration of justice or delay the trial. *Id.* The court reviewed the denial of the defendant's request under an abuse of discretion standard. *Id.* The issue presented in the parties' briefs to the Court of Criminal Appeals is whether the proper standard of review on appeal was de novo or abuse of discretion. Regardless of which standard of review is proper, our result in this case would be the same.

7

We now proceed to determine the effect of that error and whether it is structural or whether it is subject to a harm analysis. Structural errors are those federal constitutional violations that "by their very nature cast so much doubt on the fairness of the trial process that, as a matter of law, they can never be considered harmless." *Satterwhite v. Texas*, 486 U.S. 249, 256 (1988). In *Johnson v. United States*, the Supreme Court set forth a list of structural errors. *Johnson v. United States*, 520 U.S. 461, 468–69 (1997). The violation from that list that concerns us here is one that occurs from the *total* deprivation of counsel at trial. *Id.* If the deprivation of the right to counsel affected and contaminated the entire criminal proceeding, the error is not subject to a harm analysis. *Satterwhite*, 486 U.S. at 257.

A *complete* denial of counsel is a structural defect that affects the framework of the trial. *Williams v. State*, 252 S.W.3d 353, 357 (Tex. Crim. App. 2008). However, not every partial denial of counsel is structural error. *See Massingill v. State*, 8 S.W.3d 733, 737 (Tex. App.—Austin 1999, order) (concluding that the denial of counsel after the imposition of sentence and before the deadline for filing a motion for new trial was not structural error and was subject to a harmless error analysis), *disp. on merits*, 2000 WL 564168 (Tex. App.—Austin May 11, 2000, pet. ref'd); *see also Davis v. State*, 228 S.W.3d 917, 920 (Tex. App.—Waco 2007, order) (relying on *Massingill* and holding same), disp. on merits, 276 S.W.3d 491 (Tex. App.—Waco 2009, pet. ref'd).

We have not found a case in which a court specifically addresses whether the partial denial of counsel during voir dire is a structural error that is not subject to a harm analysis or is a constitutional error that is subject to a harm analysis. But in *Eason*, the Court of Criminal Appeals reversed the judgment and remanded the cause to the trial court without doing a harm analysis and without noting that the error was structural *when the defendant did not knowingly and intelligently waive*

8

*his right to counsel* and the voir dire examination was conducted in the absence of counsel. *Eason*, 563 S.W.2d at 947. However, later, in *Gobert*, a case where counsel was absent for a portion of voir dire, the Court of Criminal Appeals stated, "[W]e perceive no harm to appellant and find that he was not deprived of the assistance of counsel." *Gobert v. State*, 717 S.W.2d 21, 24 (Tex. Crim. App. 1986). The court noted that counsel was only absent for a short time at the beginning of voir dire and not during the entire voir dire as in *Eason*. *Id.* at 23. In a concurring opinion, Judge Teague stated that he would hold that the trial court denied the appellant his right to counsel during voir dire but that counsel's absence was harmless beyond a reasonable doubt. *Id.* at 26.

Here, Appellant was not totally deprived of his right to counsel during voir dire. Before Appellant sought to represent himself, the trial court had appointed counsel to represent Appellant. When Appellant insisted on representing himself, the trial court informed him that his previously appointed counsel would stay in the courtroom and serve as standby counsel. The trial court told Appellant that Sherrod was available "[s]o that you can ask a question of him if you needed it, okay?" Further, appointed counsel participated in making challenges to the jury panel members and fully represented Appellant for the remainder of the trial after voir dire. Because Appellant was not totally deprived of counsel during voir dire, we hold that the error was not a structural one but, rather, one subject to a harm analysis. Therefore, under the provisions of Rule 44.2(a) of the Texas Rules of Appellate Procedure, we will reverse for nonstructural constitutional error unless we determine "beyond a reasonable doubt that the error did not contribute to the conviction or punishment." TEX. R. APP. P. 44.2(a).

During the State's voir dire, the prosecutor asked the panel whether anyone knew him. The prosecutor also addressed, among other things, the importance of giving Appellant a fair trial, whether anyone had undergone negative jury service

9

experiences, whether there were any matters that would divert their attention from jury service, and whether any of the panel members had been involved in murder cases. The prosecutor also inquired about prior encounters with law enforcement, and he also mentioned the State's burden of proof.

When the State completed its voir dire, Appellant then began his voir dire of the jury panel. He mentioned proof and credibility. He also presented the idea of how the jury panel could see an event occur but how each person could have a different viewpoint about what he or she saw. Appellant asked whether anyone on the panel had a problem with him wearing jail clothes; he had refused to change out of his jail clothes and was tried in those clothes. Appellant also asked the panel about their experiences as victims of crimes. He talked to the jury panel about judging people based on their physical features, about how investigations based on forensic and physical evidence were more credible than investigations based on confessions, about the right to defend one's self and defend one's house and property, about how people who are on drugs are capable of doing anything at any given time, and about believing what a police officer says just because he is a police officer. Appellant also covered several other topics. When Appellant asked whether anyone had been involved in or had to deal with a sexual assault case, the trial court called him to the bench and held a discussion with him. After that discussion, Appellant changed his question and asked whether anyone had been the victim of an assault or theft. Toward the end of his voir dire, Appellant asked about involvement in DWI cases. The trial court told Appellant that the question was not relevant. It was at this time that Appellant attempted to reclaim his right to counsel and allow Sherrod to finish the voir dire. As we have noted, the trial court denied Appellant's request.

Appellant argues that the denial of counsel was harmful because the voir dire was not thorough. In support of that argument, Appellant names a number of

topics that he did not cover during voir dire. Appellant's argument, at least in part, attacks his own representation and his own failure to cover certain topics. A defendant who elects to represent himself cannot thereafter complain that the quality of his representation amounted to the denial of effective assistance of counsel. *Williams v. State*, 549 S.W.2d 183, 189 (Tex. Crim. App. 1977). Further, whether the State's voir dire was beneficial to Appellant is an appropriate consideration in our harm analysis. *Saunders v. State*, 721 S.W.2d 359, 363–64 (Tex. App.—Tyler 1985, pet. ref'd). We have outlined some of the matters covered by the State in its voir dire. It is clear that Appellant benefitted from portions of the State's voir dire examination.

Under the record in this case, we determine beyond a reasonable doubt that any error connected with the trial court's refusal to allow appointed counsel to complete the voir dire examination did not contribute to Appellant's conviction or punishment. *See* TEX. R. APP. P. 44.2(a). We overrule Appellant's first issue on appeal.

In his second issue on appeal, Appellant claims that he received ineffective assistance from his appointed counsel. Despite his numerous allegations, Appellant has not shown that he received ineffective assistance of counsel.

The standard of review for ineffective assistance of counsel is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), and *Bone v. State*, 77 S.W.3d 828 (Tex. Crim. App. 2002). To prevail, Appellant must first show that his counsel's performance was deficient. *Strickland*, 466 U.S. at 687; *Bone*, 77 S.W.3d at 833. Specifically, an appellant must show "that his counsel's representation fell below the objective standard of professional norms." *Bone*, 77 S.W.3d at 833. "Second, [an] appellant must show that this deficient performance prejudiced his defense." *Id.* To do this, "the appellant must show a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been

different." *Id.* (quoting *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002)). "A 'reasonable probability' is one sufficient to undermine confidence in the outcome." *Id.* "It is not sufficient for [an appellant] to show 'that the errors had some conceivable effect on the outcome of the proceeding.'" *Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011) (quoting *Strickland*, 466 U.S. at 693). "Rather, [an appellant] must show that 'there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'" *Id.* (quoting *Strickland*, 466 U.S. at 695). Thus, the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and the defendant must overcome the presumption that the challenged action might be considered sound trial strategy. *Id.* at 689. To overcome the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record." *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). When determining the validity of an ineffective-assistance-of-counsel claim, judicial review must be highly deferential to trial counsel and avoid the deleterious effects of hindsight. *Ingham v. State*, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984).

Appellant asserts that trial counsel was ineffective because he did not urge pretrial motions filed both by prior counsel and by Appellant; did not obtain adequate discovery, including the examination of cell phone records, the cell phone itself, and audio and video recordings of police dispatch calls; did not discuss the results of that discovery with Appellant and submit the same to an expert; failed to request a continuance to seek more time to prepare for trial; failed to keep

Appellant informed so that he could make informed decisions regarding his defense; failed to secure testimony of certain witnesses that Appellant believed were favorable to his defense; failed to locate and secure the attendance of certain witnesses; failed to personally interview witnesses rather than conduct interviews through an investigator; and failed to obtain an expert witness to testify regarding bullet trajectory.

Appellant presented his claims to the trial court through a motion for new trial. Appellant's trial counsel testified at the hearing on the motion. He told the trial court that he had complete access to the State's file, including cell phone information, and therefore did not need a continuance or further discovery in order to prepare for trial. Trial counsel also explained that the investigator interviewed the witnesses that had been suggested by Appellant but that those interviews revealed that the witnesses' testimony would not be beneficial to Appellant's defense. Counsel testified that the bullet trajectory possibility that had been suggested by Appellant—that Sanchez shot McCain from the street—was investigated but that the theory did not match any of the other evidence, including the autopsy report. Trial counsel also testified that he went over the case with Appellant many times.

In his testimony at the hearing, Appellant disputed trial counsel's testimony. At a hearing on a motion for new trial, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Parson v. State*, 392 S.W.3d 809, 820 (Tex. App.—Eastland 2012, pet. ref'd). Furthermore, Appellant's testimony did not show that the witnesses were available and that they would have testified in his favor. *See Perez v. State*, 310 S.W.3d 890, 894 (Tex. Crim. App. 2010). The witnesses did not testify at the hearing on the motion for new trial, and Appellant did not attach any affidavit to his motion for new trial.

Under this record, we hold that Appellant has failed to show that his counsel's representation fell below the objective standard of professional norms. Therefore, he has failed to meet the first prong of *Strickland*. We need not address the second part of that standard. We overrule Appellant's second issue on appeal.

In his third issue, Appellant claims that the trial court erred when it forced him to appear in a jail-issued orange jumpsuit. That action, he claims, resulted in the denial of his right to a fair trial and his right to be presumed innocent. When a trial court forces a defendant to appear at trial in jail clothes, it might thereby impinge upon the presumption of innocence afforded to an accused. *Lantrip v. State*, 336 S.W.3d 343, 351 (Tex. App.—Texarkana 2011, no pet.). A defendant who protests must timely object. *Id.* Here, not only did Appellant fail to object, he also, numerous times, told the trial court that he was not going to change. Appellant also asked the jury panel during voir dire about him wearing the orange jumpsuit. At one of the times that the trial court told Appellant that he could change clothes, Appellant told the trial court that it was not going to be a fair trial anyway and that the Department of Justice and the board of judicial conduct already were looking into his trial, and he continued to refuse to change clothes. Appellant was free to make the decision to be tried in jail clothes. *Id.* Therefore, because Appellant did not timely object to being tried in jail clothes but, rather, did so by his own choice, we overrule his third issue on appeal.

We affirm the judgment of the trial court.

April 9, 2015                                                                JIM R. WRIGHT

Publish. *See* TEX. R. APP. P. 47.2(b).                    CHIEF JUSTICE

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.