Opinion filed April 8, 2021



In The

# Eleventh Court of Appeals

_____

## No. 11-19-00137-CR
_____

**REGINALD GENELL JOHNSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 104th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 21591B**

## M E M O R A N D U M   O P I N I O N

The grand jury indicted Reginald Genell Johnson for the offenses of possession of cocaine with intent to deliver and possession of cocaine. The jury found Appellant guilty of the second-degree felony offense of possession of cocaine with intent to deliver. Upon Appellant's plea of true to an enhancement allegation regarding a prior felony conviction, the jury found the enhancement allegation to be

"true" and assessed Appellant's punishment at confinement for twenty-five years and a $5,000 fine. The trial court sentenced him accordingly. We modify and affirm.

*Issues*

On appeal, Appellant raises two issues and argues that (1) the evidence was insufficient to convict him of possession of cocaine with intent to deliver and (2) the trial court erred when it denied his motion to suppress.

*Background Facts*

Shortly after midnight on the night of the offense, Officer Catherine Mason (then Catherine Eberhardt) with the Abilene Police Department was on patrol driving south when she encountered Appellant driving in the opposite direction. When she looked behind her after he passed her, she could not see his license plate; she testified at the hearing on Appellant's motion to suppress that his rear license plate was "solid black." It is a traffic violation if the rear license plate of a vehicle is not illuminated so that it is visible from fifty feet away. Officer Mason testified at trial that this distance is approximately three car lengths, but she stated that she could not see Appellant's license plate from one car length away.

Officer Mason then turned around to initiate a traffic stop and observed Appellant "roll" a stop sign. Officer Mason activated her lights to indicate to Appellant that he needed to pull over. Before Appellant pulled over, however, Officer Mason observed him moving around in the vehicle. Appellant also did not pull over immediately. As a result, Officer Mason called for backup.

Once she approached the vehicle, Officer Mason asked Appellant for his driver's license. He did not have one, but he gave Officer Mason his state-issued identification. There was a passenger in the vehicle who was identified as Carl Robert. Officer Jerod Daniel responded to Officer Mason's call for backup. When he arrived at the scene, he approached the vehicle from the passenger's side blind spot so that Officer Mason could see him, but the vehicle occupants could not. When

Officer Mason saw him, she returned to her vehicle. Officer Daniel could see into the vehicle. He observed Appellant watch Officer Mason walk away. Then Appellant quickly turned around, began manipulating something under the steering wheel, and pulled something out. Officer Daniel immediately turned his flashlight on and saw that Appellant was holding a clear plastic bag.

He immediately told Appellant to stop what he was doing and give him the bag, which Appellant did. The plastic bag contained several large white rocks of what the officer presumed to be crack cocaine. The substance was field-tested and was also subsequently tested at the crime laboratory in Abilene; altogether, Appellant was found with approximately 2.05 grams of crack cocaine. Once Appellant was placed in custody at the scene, he told Officer Mason that he did not sell cocaine but that he was "going to get high, you caught me in the process of going to get high." The officers searched Appellant and found that his wallet contained $600 in cash. In Appellant's vehicle, the officer's found three cell phones, but no instruments to consume the crack cocaine.

At trial, Appellant testified that he had sold his vehicle for $3,600 and that the buyer had paid him only half. On the night of Appellant's arrest, the mother of his children, Jaquayla Jones, called him to tell him that she had found the vehicle. Jones then picked up Appellant along with Robert, a family friend, to go get the vehicle. Appellant testified that Jones dropped them off and that Appellant used his spare key to get into the vehicle and drive off. He stated that he had planned to drop off Robert and take the vehicle home but that he was pulled over in the process.

Appellant also testified that his rear license plate light was not out. He said he knew this because the message center would read "lamp out" if any bulb was not working. According to Appellant, when Officer Mason told him his light was out, the message center did not read "lamp out." Appellant also denied knowledge of the cocaine. He testified that he was looking for his insurance papers in a compartment

3

by the radio when observed by Officer Daniel. Appellant said that, when he removed the papers, the plastic bag just happened to be in the compartment.

Appellant also testified that he had $600 in his wallet because over the previous few days he had worked on some cars and had gotten paid. That story was not corroborated at trial. Appellant admitted that one of the cell phones belonged to him, but he contended that he did not know anything about the other two. Further, Appellant stated that he had told Officer Mason that he smoked crack cocaine merely because he was speaking out of frustration at the situation.

The State presented the testimony of Agent Marc Valentine, an experienced officer in the narcotics division of the Abilene Police Department. He testified that the typical amount of crack cocaine for personal use is around .2 grams. He stated that the amount found in this case was not an amount typical for personal use and that the possession of an amount over one gram would generally indicate that the person was involved in distribution. Agent Valentine further testified that drug dealers often handle large amounts of cash and that the amount of crack cocaine found in this case would sell for $150 to $200.

Agent Valentine also mentioned various indicators that he uses to determine if someone is in possession of a controlled substance for the purpose of selling it. The indicators present in this case were the following: the absence of any device to smoke the crack cocaine, the pieces already being broken up for distribution, and the amount being more than the typical amount for a user. On cross-examination, Agent Valentine stated that he was testifying in general terms and that he had not been personally involved in the initial investigation of this case.

*Discussion*

**1. The evidence is sufficient to support Appellant's conviction of possession with intent to deliver.**

*Standard of Review*

We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). When we conduct a sufficiency review, we consider all of the evidence admitted at trial, including pieces of evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778. Intent may also be inferred from circumstantial evidence, such as acts, words, and the conduct of an appellant. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004).

*Analysis*

In his first issue, Appellant claims that the evidence was insufficient to support his conviction for possession of a controlled substance with intent to deliver. (ApantBr19) A person commits an offense if the person "knowingly manufactures, delivers, or possesses with intent to deliver" a controlled substance. TEX. HEALTH & SAFETY CODE ANN. § 481.112(a) (West 2017). As Appellant does not dispute that he was in possession of the crack cocaine, we need only determine if the evidence was sufficient to prove he had the intent to deliver. "Deliver" means to "transfer, actually or constructively, to another a controlled substance." *Id.* § 481.002(8) (West Supp. 2020). The intent to deliver may be established by circumstantial evidence. *Jones v. State*, 300 S.W.3d 93, 97 (Tex. App.—Texarkana 2009, no pet.). In determining whether an individual possessed the intent to deliver, courts have considered the following:

> (1) the nature of the location at which the defendant was arrested;
> (2) the quantity of controlled substance in the defendant's possession;
> (3) the manner of packaging; (4) the presence (or lack) of drug paraphernalia (for either drug use or sale); (5) the defendant's possession of large amounts of cash; and (6) the defendant's status as a drug user.

*Williams v. State*, 902 S.W.2d 505, 507 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). "The number of factors present is not as important as the logical force the factors have in establishing the elements of the offense." *Jones*, 300 S.W.3d at 97. In addition, "[i]ntent can be inferred from the acts, words, and conduct of the accused." *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995); *Hughitt v. State*, 539 S.W.3d 531, 542 (Tex. App.—Eastland 2018), *aff'd*, 583 S.W.3d 623 (Tex. Crim. App. 2019). Moreover, expert testimony from an experienced law enforcement officer may be used to help establish intent to deliver. *Jones*, 300 S.W.3d at 97.

Multiple factors weigh in favor of upholding Appellant's conviction. Here, the officers found several rocks of crack cocaine in a clear bag hidden in Appellant's vehicle—an amount that an experienced narcotics officer testified would not typically be for personal use. In addition, Appellant had $600 in cash in his wallet, and the officers did not find any instrument on Appellant or in his vehicle to consume the cocaine. Also, Officer Mason testified that there were known drug dealers in the area where Appellant was stopped. Three cell phones and several rocks of crack cocaine in sizes for individual sale were also facts that the jury might have considered. From this, we hold that there was sufficient evidence for the jury to have found beyond a reasonable doubt that Appellant possessed the intent to deliver the crack cocaine, and we overrule Appellant's first issue.

## 2. The trial court did not abuse its discretion when it denied Appellant's motion to suppress.

*Standard of Review*

"We review a trial court's denial of a motion to suppress for an abuse of discretion and apply a bifurcated standard of review, affording almost complete deference to the trial court's determination of historical facts, especially when those determinations are based on assessments of credibility and demeanor." *Furr v. State*, 499 S.W.3d 872, 877 (Tex. Crim. App. 2016). "[W]e review a judge's application of the law to the facts *de novo*. We will sustain the judge's ruling if the record reasonably supports that ruling and is correct on any theory of law applicable to the case." *Cole v. State*, 490 S.W.3d 918, 922 (Tex. Crim. App. 2016) (footnote omitted). Further, when the trial court makes no formal findings of fact, "we view the evidence brought forward at the suppression hearing in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact supported by the record." *Parson v. State*, 392 S.W.3d 809, 815 (Tex. App.—Eastland 2012, pet. ref'd).

*Analysis*

In his second issue, Appellant argues that the trial court erred when it denied his motion to suppress because Officer Mason did not have reasonable suspicion to believe that he had committed a traffic offense. At the hearing on his motion to suppress, Appellant testified that his rear license plate light was not out. He stated that, in addition to the fact that his dashboard did not read "lamp out," he could see for himself that the light was not out when he was sitting in the back of the police car. The mother of Appellant's children, Jones, also testified that, when she arrived at the scene after someone told her that Appellant was being arrested, she saw that the light was not out. Officer Mason also testified that her dashcam video showed that the rear license plate light did function; however, she insisted that it was not functioning properly and did not illuminate the license plate such that it could be seen from fifty feet away.

The temporary detention of individuals by the police to address traffic violations constitutes a seizure within the meaning of the Fourth Amendment and must be reasonable. *Whren v. United States*, 517 U.S. 806, 809–10 (1996); *Kothe v. State*, 152 S.W.3d 54, 62–63 (Tex. Crim. App. 2004). The officers must have at least reasonable suspicion to believe that a traffic violation has occurred. *See Lerma v. State*, 543 S.W.3d 184, 190 (Tex. Crim. App. 2018). An officer has reasonable suspicion to detain if the officer has "specific, articulable facts that, combined with rational inferences from those facts, would lead him to reasonably conclude that the person detained is, has been, or soon will be engaged in criminal activity." *Parson*, 392 S.W.3d at 815. However, an actual traffic violation constitutes probable cause that sufficiently justifies the initial detention. *Walter v. State*, 28 S.W.3d 538, 543 (Tex. Crim. App. 2000).

The Texas Transportation Code requires the operator of a motor vehicle to have a taillamp or separate lamp that illuminates the rear license plate to make it

8

"clearly legible at a distance of 50 feet from the rear." TEX. TRANSP. CODE ANN. § 547.322(f) (West 2011). At the hearing on Appellant's motion to suppress, Officer Mason testified that, although the rear license plate light appeared to be working in the dashcam video, the plate was "solid black" when Appellant's vehicle passed her on the street. In addition, Officer Mason did not stop Appellant solely because of his rear license plate light; she also watched him neglect to come to a complete stop at an intersection, which is also a traffic violation. TRANSP. § 545.151(a)(1).

This court has carefully reviewed the record. None of the video taken of the pursuit, stop, or arrest—including that from the dashcam and the personal cams of both Officer Mason and Officer Daniel, corroborates the testimony about a lack of illumination of the license plate. However, all of the relevant video was taken with Officer Mason's patrol car lights behind Appellant's vehicle; the patrol car lights, themselves, illuminated Appellant's license plate. To see a lack of illumination, Officer Mason would have had to have observed Appellant's rear license plate when she passed Appellant's vehicle and looked backward, either by personally turning her head or while looking in her rearview mirror. The police videos also fail to corroborate the claim of a failure to come to a complete stop. The patrol car dashcam video showed Officer Mason's patrol car passing Appellant's vehicle and then having to wait for another vehicle to pass her before she could turn around—having traveled at least half a block after passing Appellant's vehicle. Once the patrol car turned around, looking at the backlights of Appellant's vehicle with the factors of distance, night darkness, and lack of optimum quality of the dashcam video, it is difficult to conclude from that video that Appellant had not made a complete stop at the only controlled intersection between Officer Mason and Appellant. The State argues that, as long as Officer Mason had a reasonable suspicion of these traffic violations, the legality of the stop does not depend on the State proving that

9

Appellant actually committed a traffic offense. The issue is whether an objectively reasonable officer would have believed that the traffic offense had occurred, considering the totality of the circumstances. The State relies upon *Whren v. United States*, 517 U.S. 806 (1996); *State v. Clark*, 315 S.W.3d 561 (Tex. App.—Eastland 2010, no pet.); *Martinez v. State*, 500 S.W.3d 456, 465 (Tex. App.—Beaumont 2016, pet. ref'd); *Fernandez v. State*, 306 S.W.3d 354, 357 (Tex. App.—Fort Worth 2010, no pet.); *Green v. State*, 93 S.W.3d 541, 545 (Tex. App.—Texarkana 2002, pet. ref'd); and *Guerra v. State*, 432 S.W.3d 905, 911 (Tex. Crim. App. 2014). The Fourth Amendment's constitutional mandate against unreasonable searches and seizures must be protected, at the heart of which is the procedure for a motion to suppress evidence. While the luxury of car and personal video cams is relatively new, the issue is an old one, and hearings on motions to suppress are a protection in place to ensure that the right to stop a citizen for a traffic violation, which might then lead to a search based on probable cause as occurred in this case, is not abused. Fortunately, as standard procedure upon a motion to suppress, these matters were placed before a trial court to weigh the evidence, to hear the testimony, to judge the demeanor of the witnesses, and to resolve conflicts in the testimony in determining whether Officer Mason had a reasonable suspicion for the stop that was made, with or without video.

As the finder of fact, the trial court was free to believe Officer Mason's testimony, and we do not find that it was unreasonable to do so. Viewed in the light most favorable to the trial court's ruling, Officer Mason had a reasonable suspicion for the initial stop of Appellant. Thus, the trial court did not abuse its discretion when it denied Appellant's motion to suppress, and we overrule Appellant's second issue.

Finally, an appellate court has the power to modify the trial court's judgment to make the judgment speak the truth when it has the necessary information before

it to do so.  *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993).  The judgment of the trial court erroneously reflects "N/A" with respect to the enhancement pleas and findings.  The record reflects that, while there were originally two enhancements paragraphs for prior felony convictions for which the State gave notice, the State waived the second enhancement paragraph at trial.  Appellant pleaded "true" to the first enhancement allegation based on his prior federal felony conviction for Felon in Possession of a Firearm and Aiding and Abetting, and the jury found the enhancement allegation to be true.  Therefore, we modify the judgment of the trial court to reflect that Appellant pleaded "TRUE" to the first enhancement paragraph and that the jury found the enhancement paragraph to be "TRUE."

*This Court's Ruling*

As modified, we affirm the judgment of the trial court.


W. BRUCE WILLIAMS
JUSTICE


April 8, 2021

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.